[No. B080858. Second Dist., Div. Four. Mar. 27, 1996.]

ITT COMMERCIAL FINANCE CORPORATION, Plaintiff and Respondent, v.
TECH POWER, INC., Defendant;
EVEREX SYSTEMS, INC., Third Party Claimant and Appellant.

---

**COUNSEL**

Van Roo & Brock and William A. Van Roo for Third Party Claimant and Appellant.

Dennis M. Young for Plaintiff and Respondent.

No appearance for Defendant.

---

**OPINION**

**VOGEL (C. S.), P. J.**—Appellant and third party claimant Everex Systems, Inc., appeals from the trial court's conclusion that Everex did not hold a security interest in the deposit account of its debtor, Tech Power, Inc. As a result of the ruling, Everex's claims were deemed subordinate to the those of plaintiff and respondent ITT Commercial Finance Corporation, a judgment

creditor of Tech Power. At issue is whether the holder of a perfected security interest in the inventory of a debtor holds a security interest in the proceeds from the sale of that inventory when they have been commingled in a bank account with other funds. Because we agree that tracing of proceeds into a commingled fund is allowable under the California Uniform Commercial Code, and that Everex presented sufficient evidence to identify the funds as having been derived from sale of inventory, we reverse the decision of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In December of 1991, ITT entered into an agreement for wholesale financing with a company known as Computerland. Under the agreement, ITT acted as Computerland's floor plan financier and held a security interest in Computerland's "inventory, . . . machines, machinery, . . . accounts receivable, . . . contracts, contract rights, choses in action, and general intangibles, . . . and all . . . proceeds." ITT perfected its security interest in the collateral by filing a UCC-1 financing statement on November 22, 1991. Computerland breached the terms of the security agreement by selling ITT-financed inventory out of trust, and when ITT demanded repayment, Computerland agreed to surrender the collateral. Before ITT could obtain possession, however, Tech Power somehow managed to remove and conceal the items of property.

On December 14, 1992, ITT filed the underlying action against Tech Power for conversion. On April 15, 1993, ITT obtained a default judgment. On July 7, 1993, ITT obtained a writ of execution from the court, at the same time requesting the marshal to levy on a deposit account of Tech Power held at General Bank. The marshal levied, and the bank reported that " '. . . there were no third party claims registered or filed with the Bank.' " The account contained approximately $57,000 at the time.

On August 18, 1993, Everex filed a third party claim, alleging that it held a perfected security interest in the General Bank deposit account. In support of its third party claim, Everex contended that it had entered into security agreements with Tech Power in January of 1988. The security agreements defined collateral as: " 'All assets of the debtor, whether now owned or hereinafter acquired and wherever located, which include but are not limited to all accounts, contract rights, accounts receivable (and all returned or repossessed goods arising from or relating to any of said accounts), machinery, equipment, inventory, documents, instruments, chattel paper, general intangibles, buildings and fixtures and all proceeds thereof.' " According to

the third party claim, Everex "perfected its security interest by filing a financing statement with the Secretary of State of the State of California." The financing statement described the property to include "inventory" and "all proceeds thereof." The claim concluded by stating: "Thus the Property that [ITT] is apparently attempting to execute a writ of execution against is subject to [Everex's] prior senior perfected security interest." The allegations of the third party claim were verified by Everex's controller.

In opposition to the third party claim, ITT contended that Everex did not hold a perfected interest in the deposit account because under California Uniform Commercial Code section 9302, subdivision (1)(g)(ii), a security interest in a deposit account is not perfected until "notice thereof is given in writing to the organization with whom the deposit account is maintained." Everex primarily asserted that it had perfected an interest in the bank account by filing the UCC-1 financing statement. In addition, Everex argued that its perfected security agreement in the inventory attached to the proceeds of sales transactions by Tech Power and that "ITT makes no effort to refute that the funds in the bank account of Tech [P]ower arose [from] sales of collateral subject to Everex's security interest and thus constitute proceeds . . . ."[1]

At the initial hearing on the third party claim, the court granted a continuance to allow Everex an opportunity to search the records for evidence of a California Uniform Commercial Code section 9302, subdivision (1)(g)(ii) notice. In addition, the court indicated that Everex could address in writing the issue of whether regardless of the existence or nonexistence of a section 9302, subdivision (1)(g)(ii) notice, the moneys in the deposit account were derived from the proceeds of the sale of collateral covered by the security agreement. Prior to the continued hearing date, Everex submitted both a supplemental memorandum addressing this point and the declaration of Ben Wong, former controller of Tech Power. In his declaration, Mr. Wong stated: "I have reviewed the account information related to the Tech Power accounts maintained at General Bank. All of the funds in the account maintained at General Bank are proceeds of collections from outstanding accounts receivable and/or proceeds from sales of inventory of Tech Power. There is no other source of cash for deposits made to the accounts maintained at General Bank." Attached to the declaration was a listing of all Tech Power deposits made to the General Bank accounts for a period of two months prior to the levy by ITT in July of 1993. Each deposit was tied to a

---

[1] We point this out because, in its brief, ITT contends that Everex's theory concerning the origin of the funds in the deposit account was not raised until after the initial hearing on the third party claim.

specific invoice and a specific piece of computer equipment. The amount deposited during this two-month period exceeded the $57,000 remaining in the account. According to Mr. Wong's declaration, "[e]ach of these deposits is of funds received, as stated, from collections from outstanding accounts receivable and/or proceeds from sales of inventory by Tech Power. Tech Power's general business practice was to deposit all funds in General Bank as its primary operating account and to disburse funds from that account to other separate accounts such as a payroll account maintained at another institution."

After taking the matter and all the evidence under submission at the final hearing, the court ruled "that Everex has failed to perfect its security interest in the deposit accounts maintained by Tech Power at General Bank as required by Commercial Code 9302(1)(g)(ii). Therefore, Everex's interest in the deposit account is subordinate to that of ITT." Everex appealed from the order.

DISCUSSION

I

The trial court's ruling that Everex failed to perfect its security interest in the deposit account as required by California Uniform Commercial Code section 9302, subdivision (1)(g)(ii) was correct. But Everex could nevertheless hold a security interest in the bank account under section 9306 of the California Uniform Commercial Code which provides, "a security interest . . . continues in any identifiable proceeds including collections received by the debtor." (Cal. U. Com. Code, § 9306, subd. (2).) Subdivision (3) of section 9306 goes on to state: "The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless . . . [¶] . . . [¶] (b) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds." (Cal. U. Com. Code, § 9306, subd. (3)(b).)

■ There is no dispute that Everex held a security interest in the original collateral—the inventory of Tech Power—and perfected that interest by filing a financing statement covering the inventory and proceeds. Under California Uniform Commercial Code section 9306, Everex's security interest in the inventory of Tech Power applies equally to the proceeds of the sale of the inventory and attaches to the deposit account to the extent that funds in the account are "identifiable" as proceeds of such sales.

The code does not provide any aid in determining when funds are or are not "identifiable." In this case, Tech Power had one bank account into which all receipts, including presumably all receipts from the sale of the converted property, were commingled. ITT seeks to persuade us that such commingled funds are not subject to tracing. In support, it cites Professor Gilmore's treatise in which it is said that "[i]f a secured party allows his debtor to make and keep collections, he loses his interest (except for a limited right in insolvency proceedings) when the collections are commingled with other deposits in the debtor's bank account." (2 Gilmore, Security Interests in Personal Property (1965) § 27.4, p. 736.) This pronouncement, however, was rejected in *Chrysler Credit Corp.* v. *Superior Court* (1993) 17 Cal.App.4th 1303 [22 Cal.Rptr.2d 37], in which the court accurately stated: " '[T]he courts have subsequently, with virtual unanimity, rejected Professor Gilmore's early view. They have held that, in certain special circumstances, a secured party may trace "identifiable proceeds" through a commingled bank account and into the hands of a recipient who lacks the right to keep them. [Citations.]' " (17 Cal.App.4th at p. 1314, quoting *Harley-Davidson Motor Co.* v. *Bank of New England* (1st Cir. 1990) 897 F.2d 611, 619-620.) Moreover, Professor Gilmore's view conflicts with that of another respected commentator, Professor Warren, who has said: "For noninsolvency cases,[2] § 9306(2) states that a security interest 'continues in any identifiable proceeds.' Thus the traditional rules of tracing (first-in, first-out, etc.), with all their uncertainties, must be used to identify proceeds that have been commingled, *e.g.*, money commingled in a bank account." (3 Cal. Commercial Law (Cont.Ed.Bar 1966) Perfection, § 3.53, p. 146.)

We adhere to the view expressed by Professor Warren and the court in *Chrysler Credit* that commingled funds may be traced if the portion which represents proceeds from the sale of collateral can be sufficiently identified. This leads us to the next issue: whether Everex presented sufficient evidence to support tracing the funds in the General Bank deposit account. Resolution of this question depends on analysis of the evidence and the burden of proof.

## II

At a hearing on a third party claim, the third party bears the initial burden of proof. (Code Civ. Proc., § 720.360; *Chrysler Credit Corp.* v. *Superior Court, supra*, 17 Cal.App.4th at pp. 1312-1313.) " ' " 'Burden of proof' means the obligation of a party to establish by evidence a *requisite*

---

[2]For insolvency cases, California Uniform Commercial Code section 9306, subdivision (4)(d) limits the amount of commingled funds which can be traced. Neither party contends that Tech Power was in bankruptcy.

*degree of belief* concerning a fact in the mind of the trier of fact or the court." [Citation.] The burden of producing evidence is "the obligation of a party to introduce evidence *sufficient to avoid a ruling against him* on the issue." [Citation.] [¶] Initially these burdens coincide. The party having the burden of proof must offer evidence so that the trier may have a basis for finding in his favor. [Citation.] During the course of the trial, however, the burden of producing evidence "may shift from one party to another, irrespective of the incidence of the burden of proof." ' " (*Chrysler Credit Corp.* v. *Superior Court, supra,* 17 Cal.App.4th at pp. 1312-1313, quoting *Rancho Santa Fe Pharmacy, Inc.* v. *Seyfert* (1990) 219 Cal.App.3d 875, 880 [268 Cal.Rptr. 505], italics in original.)

██ In this instance, third party Everex had the initial burden of proving that the funds in the deposit account derived from the sale of its collateral. In the absence of any evidence, ITT would prevail. ██ The test to be applied is the "lowest intermediate balance rule" used in tracing trust funds, described by the court in *Chrysler Credit* as follows: " 'If the trustee withdraws money and dissipates it, the trust funds are only those which remain on deposit. Subsequent deposits ordinarily do not inure to the benefit of the trust. Hence, the beneficiary can have his prior lien only upon the *lowest intermediate balance* left in the account. And if at any time the trustee withdraws and dissipates the entire fund, the beneficiary loses all prior claim and is merely a general creditor of the trustee. [Citations.]' " (17 Cal.App.4th at pp. 1315-1316, quoting 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 144(3), p. 1000, italics in original.) The rule was put even more plainly by the bankruptcy court *In re Airport Inn Associates, Ltd.* (Bankr.D.Colo. 1990) 132 Bankr. 951 (decided under California law): "[W]here a secured party's proceeds are commingled in a general bank account, the secured party has successfully identified the proceeds by tracing them into the account or accounts into which the deposit was made. At that point, a presumption arises that general payments are first made from general funds and that the security interest is only eroded as the balance in the account drops below the amount of proceeds deposited. The presumption is analogous to that which arises when a trustee commingles trust funds." (132 Bankr. at p. 958, quoting *In re John Deskins Pic Pac, Inc.* (Bankr.W.D.Va. 1986) 59 Bankr. 809, 813.)

██ Everex established through the declaration of Mr. Wong that proceeds from Tech Power's inventory were deposited into the General Bank account, and that the amount deposited from the sale of inventory during the last two months prior to the execution was well in excess of the amount found in the bank account at the time of execution. In other words, Everex

showed that receipts from the sale of specific computer equipment on which Everex held a security interest exceeded the balance of the account. This shifted the burden to ITT to produce evidence that contradicted Mr. Wong's declaration. ITT argued in essence that since it had a security interest in the Computerland equipment and the equipment was converted by Tech Power, its security interest continued in Tech Power's deposit account. But ITT produced no independent evidence, relying on its default judgment alone to prove its case. The judgment demonstrated at most that Tech Power converted property in which ITT held a security interest. It did not establish that proceeds from the sale of the Computerland property ended up in the General Bank deposit account during the relevant period. Accordingly, ITT failed to refute the evidence presented by Everex, and Everex should have prevailed on its third party claim.

## DISPOSITION

The order of the trial court dated October 7, 1993, granting ITT priority over Everex's claim to the assets in the deposit account is reversed. On remand, the trial court is instructed to enter an order in favor of third party claimant Everex. Everex is awarded its costs on appeal.

Epstein, J., and Hastings, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 17, 1996.