[No. C061848. Third Dist. Aug. 17, 2010.]

JOHN M. FARR, Plaintiff and Appellant, v.
COUNTY OF NEVADA, Defendant and Respondent.

COUNSEL

John M. Farr, in pro. per., for Plaintiff and Appellant.

Michael Jamison, County Counsel, Leanne K. Mayberry and Scott A. McLeran, Deputy County Counsel, for Defendant and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—This is an appeal by a property owner, John M. Farr, of a judgment upholding the property tax assessment decision of the Nevada County Assessment Appeals Board (Board) for his owner-occupied

single-family home. We conclude the Board's failure to apply the statutory presumption affecting the burden of proof in favor of the homeowner, Farr, at the hearings before it (Rev. & Tax. Code, § 167, subd. (a) (section 167(a)) requires reversal of the judgment and a remand to the Board for a new hearing.

## BACKGROUND[1]

Although our reason for reversing the judgment is based on the Board's failure to correctly apply the burden of proof and the presumption of correctness in favor of the homeowner, a recitation of pertinent evidence is helpful in understanding the effect of the error.

In 2004, Farr began construction on a new main house on property his family had owned for a number of years on Donner Lake in the Truckee area. At the end of 2004, the house was assessed a 40 percent completion property tax assessment of $265,000. In 2006, after completion of the home, the Nevada County Assessor (Assessor) issued a supplemental assessment of $1,335,000, bringing the total assessment for the newly constructed house to $1.6 million for the 2005/2006 tax year. The assessment value of the underlying land and a previously constructed garage and guesthouse were not at issue and not reassessed.

Disagreeing with the supplemental assessment for his new house, Farr contacted the Assessor's office to arrange for an informal review. During the informal review process, Farr claimed the senior appraiser for the Assessor admitted the value of the earlier constructed garage and guesthouse was erroneously included in the supplemental assessment for the main home. According to Farr, the senior appraiser also admitted he erroneously assumed in his analysis that the basement storage area of the main house was fully finished living space. Farr and the senior appraiser could not, however, resolve other disputes regarding valuation of the property by market analysis of comparable homes and/or cost analysis and Farr filed a formal appeal of the assessment.

---

[1] We draw our summary of the background of this matter largely from the minutes of the hearings before the Board and the Board's findings of fact and decision (corrected) contained in the administrative record. As the administrative record reflects the parties had the opportunity to offer correction to the minutes, as well as to the findings of fact and decision, and that both were amended in some particulars, we consider the minutes and the findings of fact and decision to be an accurate reflection of the proceedings. Because we resolve this appeal based on a fundamental flaw in application of the burden of proof, we find it unnecessary to detail much of the underlying evidentiary disagreements of the parties regarding the appropriate method of valuation for the house.

An initial hearing was held before the Board on October 23, 2006. The supervising appraiser for the Assessor told the Board at the beginning of the hearing Farr should give his presentation first because the property was not Farr's principal place of residence. In accordance with this comment, Farr proceeded first, submitting a prepared report to the Board in which he claimed the total value of his newly constructed home was $715,000. Farr then explained his dispute with the Assessor's senior appraiser over the supplemental assessment for the newly constructed main house on his property. Farr reviewed where he and the senior appraiser disagreed on the use of the Board of Equalization (BOE) cost method of analysis for the property. Farr also provided his analysis of the comparable sales prepared by the senior appraiser to support the assessment figure complaining, among other things, that the senior appraiser had erased the 1975 base year value for all preexisting site improvements. Farr offered analysis and photos of sales comparables he felt were appropriate to use for determining the value of his home. Farr submitted an appraisal of $994,500 for his home that he obtained from a Truckee licensed appraiser, Jeff Hartley, but outlined a number of points on which he thought Hartley had overvalued the home.

The senior appraiser then submitted the staff report of the Assessor and reviewed how he had now arrived at a reduced value for the house of $1,473,000. The senior appraiser submitted new supporting comparable sales information. He and the supervising appraiser for the Assessor's office answered questions from the Board. When it became evident on questioning that no interior inspection of Farr's home had been done by the Assessor, a motion was made and passed by the Board that the Assessor be permitted to make a thorough inspection of the home and, if the Assessor felt it was warranted, the Assessor should review the estimate of quality, and if the level of quality was less than previously determined, the Assessor should make appropriate adjustments and come back with another recommendation. The hearing was continued until January 22, 2007.

By the time of the January hearing, Farr had appealed the 2006/2007 regular assessment for his property and at the hearing, the Board approved the consolidation of the two appeals. The supervising appraiser for the Assessor's office then noted an interior inspection of Farr's home had been completed. The senior appraiser submitted a new staff report with different comparable sales and the Assessor's analysis of mountain cost data to support a further reduced recommended assessment value for Farr's home of $1,212,000. The Board questioned the senior appraiser and discussed some parts of the report. As this was the first time Farr had seen the Assessor's new staff report and recommendation, the Board asked Farr if the new value met with his approval. It did not.

Farr introduced a binder of material, broken down into multiple sections, which provided further information regarding the comparable sales claimed by the Assessor and Hartley at the prior hearings and the quality of construction in Farr's home. Farr's binder also included copies of the BOE's quality and cost tables and of Farr's resume as a professional groundwater hydrologist and licensed civil engineer. Farr proceeded to review much of the material contained in his binder, focusing on a number of differences between his home and the previously offered comparable sales properties. Farr argued for application of his cost method analysis. After some questioning by the Board, the Board moved to take the case under submission. Farr objected that he had not had a chance to ask any questions of the Assessor's office regarding all the new information he just received. The Board adjourned.

At its February 16, 2007 meeting, the Board acknowledged a request to reopen the hearing on Farr's assessment appeals to allow Farr to question the Assessor's staff on some of the comparable sales they used. At this point, Robert Shulman, county counsel for Nevada County and counsel for the Board, noted that Farr had presented his case first because the Board was under the impression the burden of proof was on Farr because the property was not his principal place of residence. Counsel indicated his research of applicable Board of Equalization rules (Cal. Code Regs., tit. 18, §§ 313, 321)[2] showed that "if a home is owner-occupied and a single-family home, then the presumption would be with the applicant." Counsel advised the Board to rule that the burden was on the Assessor in this case and the presumption was with the applicant.

The Board discussed whether counsel was correct in his reading of the rules and then proceeded to discuss other procedural matters. Returning to the issue of the presumption, one of the Board members stated that he "did not see that the presumption would give one side or the other in this particular matter an advantage." Counsel replied that "it was not so much an advantage. It was just stating absent persuasive evidence to the contrary, the homeowner's opinion is presumed more correct than the Assessor's opinion. Since all this evidence has come in anyway, that will determine the outcome." Counsel went on to indicate that the "basic presumption in most cases is that the

---

[2] "The Legislature has authorized the [Board of Equalization] to oversee the operation and functioning of local boards of equalization. Accordingly, '[the] State Board of Equalization shall . . . . [prescribe] rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing . . . .' (Gov. Code, § 15606, subd. (c).) Toward this end, the Board is empowered to issue 'rules, regulations, instructions, and forms . . . .' (Gov. Code, § 15606, subd. (f).) The Board, pursuant to this authorization, has enacted administrative rules governing both local boards of equalization and assessors. (Cal. Admin. Code, tit. 18, rules 1–60; see *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864, 879 [128 Cal.Rptr. 54].)" (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1151 [236 Cal.Rptr. 869].)

Assessor has done his or her duty correctly, and therefore, his or her opinion is the correct one absent sufficient evidence by the other side to overcome that presumption." Another Board member then opined that Farr "was the one who asked for more time to continue a due process," so "he believed it would only be fair to allow him to go first and present whatever evidence he had relevant to the questioning period, not the issue-at-chief, so that the hearing would not be reopened and there would be no need for the Assessor to have any further burden other than to respond to Mr. Farr." After some further discussion, it was concluded the hearing would be reopened for the limited purpose of cross-examination and the Board would accept Farr's additional evidence only as it was relevant to such cross-examination. Farr's additional evidence was distributed to the Board and Farr proceeded with his presentation and questioning of the Assessor's senior appraiser. After final comments by Farr, the Assessor's senior appraiser, and the Assessor's supervising appraiser, the Board recessed for deliberations and then adjourned the hearing.

The minutes of the hearing reflect no formal ruling by the Board regarding the presumption, but the summary of the February hearing contained in the Board's subsequently issued findings of fact and decision reflect that "[t]he Board decided to proceed on the basis that enough evidence had been introduced that neither party was likely to gain much advantage from a presumption." As pertinent to the issue we consider, the summary of the February hearing also states the Board considered a particular exhibit submitted by Farr relevant to the Board's decision, but that it did not "rebut" the information contained in the Assessor's exhibit.

The Board's written findings of fact and decision on Farr's appeals includes seven relatively short findings of fact based on the testimony and exhibits received. In its findings, the Board rejected the BOE cost method of valuation as "inherently less reliable than using relevant and timely comparable sales in the vicinity" once the Assessor had completed the inspection of Farr's house. The Board found Farr's downward adjustment of the average value per square foot given in his appraiser's report "indicates that [Farr] chooses to rely solely on his own analysis and conclusions as to comparable sales" and that Farr's range of values appeared too low "given market conditions in September 2005, based on the totality of evidence in this matter." The Board found the Assessor's last recommended valuation was actually "based on the cost approach, which is less reliable than the comparable sales approach." The Board then found the three comparable sales offered by the Assessor at the last hearing were reliable and appropriate to use. The Board found the average per square foot adjusted improvement value of the three comparables was $335. The Board multiplied 335 by 3,289,

the undisputed square footage of Farr's home, for a valuation of "$1,101,815, except for the basement." The Board subtracted $72,000 from its valuation for the basement, then added $38,400 back into the valuation for the basement, based on Hartley's opinion that the basement was worth $100 per square foot (384 square x $100 per square foot). The Board arrived at a total fair market improvement value for the home of $1,068,215. "As to the remainder of the subject property, the Prop[osition] 13 (Cal. Constitution Art. XIII A) factored value for the detached garage and guest house remains at $171,360 and for the land it remains at $59,084."

In its decision, the Board directed the Assessor to enroll the following values for the supplemental assessment: "Land - $59,084, Improvements - $1,239,575, with the home and basement valued at $1,068,215, and the detached garage and the guest house valued at $171,360. Property - $1,298,659." For the 2006/2007 regular assessment, the Assessor was directed to adjust the previous values in accordance with Proposition 13.

Farr's appeal of the Board's decision and claim for refund filed with the Nevada County Board of Supervisors was denied and Farr filed this action in the superior court, originally as a petition for writ of mandate and then on a first amended complaint against the County of Nevada asking for a refund of taxes pursuant to Revenue and Taxation Code section 5140 et seq., and for a permanent injunction requiring the county to refrain from discriminating against part-time residents in the assessment valuation of new construction. The superior court rejected Farr's claims, upheld the decision of the Board, and denied Farr any relief.

On appeal, Farr claims the trial court reversibly erred in rejecting his claims. He contends the Board (1) failed to apply the proper valuation method, which was the cost method because reliable comparable sales data were not available; (2) based its assessment valuation on legally incompetent comparable sales evidence (that did not include the necessary value adjustments required by applicable regulation) and disregarded without explanation his competent comparable sales evidence; (3) violated applicable legal rules regarding the valuation of preexisting improvements when equalizing the property tax on his new construction; (4) denied him his right to due process by, among other things, violating section 167(a); (5) made legally deficient findings of fact; and (6) discriminated against him as a part-time resident of the area.

We agree that the Board violated section 167(a) and conclude the Board failed to proceed in the manner required by law when it failed to place the burden of proof on the Assessor in accordance with the rebuttable presumption provided by section 167(a). We shall reverse the judgment of the trial

court and direct the trial court to enter a new judgment vacating the Board's decision and remanding the matter to the Board for a new hearing at which section 167(a) is properly applied.

## DISCUSSION

## I.

## <u>Standard of Review</u>

■ The standard of review in this matter has been stated as follows: " 'The California Constitution specifies that "[t]he county board of supervisors, or . . . assessment appeals boards created by the county board of supervisors, shall constitute the county board of equalization" with the duty to "equalize the values of all property on the local assessment roll by adjusting individual assessments." (Cal. Const., art. XIII, § 16.) Accordingly, "while sitting as a board of equalization, the county board of supervisors [or assessment appeals board] is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution" (*Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 185 [114 Cal.Rptr. 137]) with "special expertise in property valuation." (*Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 42, fn. 6 [116 Cal.Rptr. 742].) In light of the semijudicial status of local boards, "their factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard." (*Cochran* v. *Board of Supervisors* (1978) 85 Cal.App.3d 75, 80 [149 Cal.Rptr. 304].) Early statements that factual findings made by local boards are "final and conclusive" (*Universal Cons. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 362 [153 P.2d 746]; accord, *Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314, 321–322 [333 P.2d 323]) have been supplanted by the substantial evidence test that tolerates a very limited reweighing of the evidence heard by the local board. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 22–23 [127 Cal.Rptr. 154, 544 P.2d 1354]; *County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 554–555 [195 Cal.Rptr. 895].) [¶] On the other hand, courts are authorized to conduct an independent reassessment "when a board of equalization purports to decide 'a question of law." (*Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 724 [96 Cal.Rptr. 379]; accord *Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 474 [112 Cal.Rptr. 327].) A board's "arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature" are legal matters subject to judicial correction. (See *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564 [290 P.2d 544]; accord *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14 at p. 22.) Finally, interpretation of statutes

and administrative regulations are quintessential issues of law. (See *Delta Air Lines, Inc. v. State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803].)' " (*Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 72–73 [69 Cal.Rptr.2d 185], quoting *Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 979–980 [274 Cal.Rptr. 313]; see *Norby Lumber Co. County of Madera* (1988) 202 Cal.App.3d 1352, 1362–1363 [249 Cal.Rptr. 646].)

■ This case involves a failure of the Board " ' "to follow the standards prescribed by the Legislature." ' " (*Mission Housing Development Co. v. City and County of San Francisco, supra*, 59 Cal.App.4th at p. 73.) As a tax proceeding is *in invitum*[3] in nature, each step must be taken in compliance with law or the proceeding is void. (*Universal Consol. Oil Co. v. Byram, supra*, 25 Cal.2d at p. 361.)

## II.

### The Board Failed to Accord Farr the Presumption Affecting the Burden of Proof in His Favor as Required by Section 167(a)

A. *Distinguishing Presumptions Affecting the Burden of Proof from Presumptions Affecting the Burden of Producing Evidence*

We start with some general principles of law necessary as background for understanding how the Board treated the assessment hearings in this matter.

■ There are two kinds of rebuttable presumptions in California: presumptions affecting the burden of producing evidence and presumptions affecting the burden of proof. (Evid. Code, § 601; see *Pellerin v. Kern County Employees' Retirement Assn.* (2006) 145 Cal.App.4th 1099, 1106 [52 Cal.Rptr.3d 201]; *Estate of Obernolte* (1979) 91 Cal.App.3d 124, 128–129 [153 Cal.Rptr. 798].) The two presumptions are significantly different.

■ A presumption affecting the burden of producing evidence "require[s] the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.) In other words, if a presumption affecting the burden of

---

[3] " 'Against an unwilling party; against one not assenting. A term applied to proceedings against an adverse party, to which he does not consent.' [Citation.]" (*Shell Western E & P, Inc. v. County of Lake, supra*, 224 Cal.App.3d at p. 984, fn. 6.)

producing evidence "applies to a proposition, the proponent of the proposition need not prove it unless the opposing party produces evidence undermining it, in which case the presumption is disregarded and the trier of fact must decide the question without regard to it. (Evid. Code, §§ 603, 604.)" (*Pellerin v. Kern County Employees' Retirement Assn., supra*, 145 Cal.App.4th at p. 1106.) A rebuttable presumption affecting the burden of producing evidence "is merely a preliminary assumption in the absence of contrary evidence, *i.e.*, evidence sufficient to sustain a finding of the nonexistence of the presumed fact." (Assem. Com. on Judiciary com., reprinted at 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 604, p. 59.) Presumptions affecting the burden of producing evidence "are 'expressions of experience' designed to dispense with unnecessary proof." (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 54, p. 203.)

█ Presumptions affecting the burden of proof, on the other hand, have " 'a more substantial impact in determining the outcome of litigation. The effect of a presumption affecting the burden of proof is "to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.) While the presumption affecting the burden of producing evidence concerns only the particular litigation in which it applies, a presumption affecting the burden of proof "is established to implement some public policy other than to facilitate the particular action in which it applies. [Citations.]" [(][Citation]; Evid. Code, § 605.)' " (*Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1425–1426 [118 Cal.Rptr.2d 105], quoting *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 682 [43 Cal.Rptr.2d 660].) A presumption affecting the burden of proof places on the party against whom it operates the obligation to establish by evidence the requisite degree of belief concerning the nonexistence of the presumed fact in the mind of the trier of fact or the court, in other words, the affirmative obligation to prove it false by a preponderance of the evidence, unless a different standard of proof is required by law. (Evid. Code, §§ 115, 606; *Pellerin v. Kern County Employees' Retirement Assn., supra*, 145 Cal.App.4th at p. 1106.) Such a presumption thereby "plays an essential part in directing the fact-finder." (*O'Connell v. Unemployment Ins. Appeals Bd.* (1983) 149 Cal.App.3d 54, 58 [196 Cal.Rptr. 505].)

█ It is true that the burden of proof and the burden of producing evidence initially coincide. (Evid. Code, § 550, subd. (b); *ITT Commercial Finance Corp. v. Tech Power, Inc.* (1996) 43 Cal.App.4th 1551, 1557–1558 [51 Cal.Rptr.2d 344]; see 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2010) Burdens of Proof and of Producing Evidence, § 47.30, pp. 1102–1103.) So it may fairly be said a presumption affecting the burden of proof initially places on the same party the burden of producing evidence.

But presumptions affecting proof and production of evidence remain distinct and should not be confused.

■ "A presumption affecting the burden of producing evidence requires the ultimate fact to be found from proof of the predicate facts in the absence of other evidence. If contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented. (Evid. Code, § 604.)" (*In re Heather B.* (1992) 9 Cal.App.4th 535, 561 [11 Cal.Rptr.2d 891].) In fact, as the trial or hearing progresses in such a situation, the burden of producing evidence, once met, may shift between the parties as further evidence is introduced, while the burden of proof remains with the party on which it is placed by law. (2 Jefferson, Cal. Evidence Benchbook, *supra*, Burdens of Proof and of Producing Evidence, § 47.31, p. 1103; see *ITT Commercial Finance Corp. v. Tech Power, Inc., supra*, 43 Cal.App.4th at p. 1558.) The ultimate burden of proof is never altered. (See *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 145 [80 Cal.Rptr.2d 126].)

■ One further point needs to be made. Equal probability satisfies a burden of producing evidence, but does not satisfy a burden of proof. (*Estate of Obernolte, supra*, 91 Cal.App.3d at p. 129.) Presumptions affecting the burden of proof are established to implement policy concerns (Evid. Code, § 605) and therefore "are justifiably given greater weight under our state's scheme. 'Certainly if a presumption is not based on probability, but is based solely on social policy, there may be more, and not less, reason to preserve it in the face of contrary proof. A presumption based on social policy may need an extra boost to ensure that the policy is not overlooked in the face of some explanation given by the opponent.' [Citation.]" (*Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 882 [268 Cal.Rptr. 505].)

## B. *Section 167(a) Is a Presumption Affecting the Burden of Proof*

We turn to the statutory presumptions affecting the burden of proof before an assessment appeals board.

■ An assessor is generally entitled to the presumption affecting the burden of proof provided in Evidence Code section 664 that he or she has properly performed his or her duty to assess all properties fairly and on an equal basis. (Evid. Code, §§ 660, 664; Cal. Code Regs., tit. 18, § 321, subd. (a); *Texaco Producing v. County of Kern* (1998) 66 Cal.App.4th 1029, 1046 [78 Cal.Rptr.2d 433]; *Hunt-Wesson Foods, Inc. v. County of Alameda* (1974) 41 Cal.App.3d 163, 180 [116 Cal.Rptr. 160]; Ehrman & Flavin, Taxing Cal. Property (4th ed. 2010) § 27:10, p. 27-22.) "Thus, the taxpayer has the burden of proving the property was improperly assessed." (*Texaco Producing v. County of Kern, supra*, at p. 1046; accord, Cal. Code Regs.,

tit. 18, § 321, subd. (a).) Accordingly, in a hearing before an assessment appeals board, the taxpayer with the burden of proof must present his or her evidence first. (Cal. Code Regs., tit. 18, § 313, subd. (c).)

However, section 167(a) provides for a different allocation of the burden of proof in a hearing involving an owner-occupied single-family home. Section 167(a) provides, in relevant part: "Notwithstanding any other provision of law to the contrary, . . . *there shall be a rebuttable presumption affecting the burden of proof in favor of the taxpayer or assessee who has supplied all information as required by law to the assessor in any administrative hearing involving the imposition of a tax on an owner-occupied single-family dwelling, the assessment of an owner-occupied single-family dwelling pursuant to this division*, or the appeal of an escape assessment." (Italics added.) The language of the statute plainly designates the presumption as one "affecting the burden of proof." (*Ibid.*; see *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882] [" '[i]f the statute's text evinces an unmistakable plain meaning, we need go no further' "].) The owner's valuation is presumed correct and the burden is on the assessor to overcome the presumption. (*Mitchell v. County of Los Angeles* (1997) 60 Cal.App.4th 497, 500 [70 Cal.Rptr.2d 476].) Because no other evidentiary standard is specified, the burden of proof requires proof by a preponderance of the evidence. (Evid. Code, § 115; see, e.g., *San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1892–1893 [58 Cal.Rptr.2d 571].)

Board of Equalization regulations recognize that section 167(a) is a statutory exception to the normal burden of proof on the taxpayer. (Cal. Code Regs., tit. 18, § 321, subd. (d).) The regulations further provide, as pertinent here, that an assessment appeals board "shall not require the applicant to present evidence first when the hearing involves: [¶] . . . [¶] (2) The assessment of an owner-occupied single-family dwelling . . . ." (Cal. Code Regs., tit. 18, § 313, subd. (c).)

As a presumption affecting the burden of proof, section 167(a) brings into play the principles we have previously discussed regarding such presumptions.

C. *Farr's Hearing Before the Board Was Not Conducted Pursuant to Section 167(a) or the Applicable Regulations*

At the first hearing before the Board, the Board imposed the obligation on Farr to present his evidence first on the suggestion of the supervising appraiser from the Assessor's office. This violated both Revenue and Taxation

Code section 167(a) and section 313, subdivision (c) of the regulations. (Cal. Code Regs., tit. 18, § 313, subd. (c).) A review of the proceedings conducted thereafter shows the Board proceeded throughout the hearings on the assumption that the Assessor's valuation of the property was entitled to greater weight and that Farr's valuation should be treated with suspicion, violating both section 167(a) and section 321, subdivision (d) of the regulations. (Cal. Code Regs., tit. 18, § 321, subd. (d).) The Board closed the matter after Farr and the Assessor had presented their cases-in-chief without allowing Farr an opportunity to cross-examine the senior appraiser for the Assessor. Only when Farr complained did the Board reopen the matter at the third hearing for the limited purpose of cross-examination.

It was at this point that counsel for the Board noted the error in the Board's assumption regarding the burden of proof. Counsel advised the Board to rule that the burden was on the Assessor in this case and the presumption was with Farr. The Board questioned his advice and one member expressed the opinion that the presumption would not give either side "an advantage" in this particular case. Here counsel went wrong: in response, counsel told the Board that "it was not so much an advantage." In fact, a presumption affecting the burden of proof is very much an advantage. Counsel went on, however, to correctly advise the Board that "[i]t was just stating absent persuasive evidence to the contrary, the homeowner's opinion is presumed more correct than the Assessor's opinion." Unfortunately, counsel's next comment appeared to treat the presumption just described as a presumption not affecting the burden of proof, but as one affecting the production of evidence. Counsel stated: "Since all this evidence has come in anyway, that will determine the outcome." Counsel then indicated the basic presumption was normally in favor of the Assessor, but did not repeat his advice that an exception applied here. The Board proceeded with the hearing, again requiring Farr to proceed first, so "there would be no need for the Assessor to have any further burden other than to respond to Mr. Farr."

If we had any doubt about the Board's failure to accord Farr the presumption affecting the burden of proof to which he was entitled under section 167(a), it is dispelled by the Board's subsequently issued findings of fact and decision. The findings of fact and decision states: "The Board decided to proceed on the basis that enough evidence had been introduced that neither party was likely to gain much advantage from a presumption." It also states the Board considered a particular exhibit submitted by Farr at the third hearing to be relevant to the Board's decision, but that it did not "rebut" the information contained in the Assessor's exhibit. These statements are wholly inconsistent with the rebuttable presumption *affecting the burden of proof* in favor of the taxpayer prescribed by section 167(a).

In its respondent's brief, the county simply addresses the issue by noting counsel advised the Board at the third hearing that "the presumption of correctness is with [the] taxpayer if the assessment is for an owner-occupied residence." As we have described counsel's advice, this is only partly true. The county then states in its brief that the Board "proceeded to decide the case on the basis of weighing the evidence, and the presumption was not invoked for or against the Assessor." That is, in fact, the problem. Farr was entitled to the presumption of correctness as against the Assessor until and unless the Assessor produced contrary persuasive evidence.

    ■■■  A decision maker's understanding and application of the correct burden of proof are essential. The Board failed " ' "to follow the standards prescribed by the Legislature." ' " (*Mission Housing Development Co. v. City and County of San Francisco, supra,* 59 Cal.App.4th at p. 73.) Its decision must be vacated. (*Universal Consol. Oil Co. v. Byram, supra,* 25 Cal.2d at p. 361.)

**III.**

**Remand for a New Hearing Is the Appropriate Remedy**

Farr asks us to set aside the trial court's judgment and to remand the case to the Board with directions to reconsider the record consistent with a conclusion by us that the Assessor failed to overcome the presumption provided by section 167(a). He also asks us to make a number of further orders essentially requiring the county to accept his contentions regarding the valuation of his home. These are not appropriate remedies. (*Mitchell v. County of Los Angeles, supra,* 60 Cal.App.4th at pp. 505–506; *Main & Von Karman Associates v. County of Orange* (1994) 23 Cal.App.4th 337, 344 [28 Cal.Rptr.2d 432].)

    ■■■  The Board is the constitutionally designated body entrusted with the duty of determining the value of property for the purposes of tax assessment. (*Norby Lumber Co. v. County of Madera, supra,* 202 Cal.App.3d at pp. 1362, 1366.) Unless the amount of tax is calculable as a matter of law, it is up to the Board to make that judgment. Not us. (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 22–23, 24–25 [84 Cal.Rptr.2d 715].) Here the evidence is in conflict and the appropriate remedy is remand.

We shall reverse the judgment of the trial court and direct it to enter a new judgment vacating the Board's decision and remanding the matter to the Board for a new hearing, to be conducted in accordance with section 167(a).

We make a few comments for purposes of such further proceedings before the Board.

First, in attempting to meet his burden of proof, the Assessor is not limited to criticizing Farr's application of the cost method of valuation and/or challenging Farr's cost figures. The comparable sales method is preferred when reliable market data is available (Cal. Code Regs., tit. 18, § 4) and the Assessor may use the comparable sales method to challenge Farr's opinion of value provided the Assessor establishes the sales he relies on are in fact comparable. (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354].) The Assessor must explain any specific adjustments he made to the sales data to ensure comparability (Rev. & Tax. Code, § 402.5; Cal. Code Regs., tit. 18, § 4, subd. (d)) and address Farr's specific claims regarding required adjustments for preexisting site improvements, the shallow pumped sewer line on Farr's property, any differences in the number of bathrooms, including en suite bathrooms, to Farr's home, and any difference in value due to Farr's home being an owner-builder home. (We are not suggesting the Assessor must necessarily make any or all such adjustments, only that the record must show the Assessor's explanation for making or not making such adjustments so that the Board may have an evidentiary basis for its consideration.) (See *Dressler v. County of Alpine* (1976) 64 Cal.App.3d 557, 569–570 [134 Cal.Rptr. 554].)

Second, the Board's written findings of fact (Rev. & Tax. Code, § 1611.5) should include all legally relevant subconclusions supportive of its ultimate decision so that a reviewing court is able to trace and adequately examine the Board's mode of analysis. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515, 516 [113 Cal.Rptr. 836, 522 P.2d 12]; *Midstate Theatres, Inc. v. County of Stanislaus* (1976) 55 Cal.App.3d 864, 887–888 [128 Cal.Rptr. 54].) While it is not necessary for the findings to cover every evidentiary matter, the Board should address specifically its reasoning for accepting or rejecting each issue raised by the parties. (*Midstate Theatres, Inc. v. County of Stanislaus, supra*, at p. 888.)

## DISPOSITION

The judgment of the trial court is reversed and the trial court is directed to enter a new judgment vacating the findings of fact and decision of the Nevada County Assessment Appeals Board and remanding the matter to the assessment appeals board for a new hearing, to be conducted in accordance with section 167(a). Appellant is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Blease, Acting P. J., and Hull, J., concurred.