Filed 6/28/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENITO GONZALEZ,<br><br>Defendant and Appellant. | C099813<br><br>(Super. Ct. No.<br>MAN-CR-FE-2017-0002556) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Michael J. Mulvihill, Judge. Reversed with directions.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

1

The compassionate release program under Penal Code[1] section 1172.2 creates a presumption in favor of recalling sentences for medically incapacitated or terminally ill inmates unless a court finds they pose an unreasonable risk of committing a super strike based on their current physical and mental condition. The trial court here found defendant Benito Gonzalez, who is terminally ill, posed an unreasonable risk because there was no evidence defendant was rehabilitated from his prior super strike offense. We conclude the trial court's analysis was inconsistent with section 1172.2 by not considering defendant's current physical and mental condition. We further conclude the placement location restriction under section 3003, subdivision (f) does not apply to defendant because he will not be released under state jurisdiction. Accordingly, we reverse the trial court's November 6, 2023 order and direct the court to recall defendant's sentence in accordance with section 1172.2.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant pled no contest in 2021 to continuous sexual abuse of a child for acts committed in 2014 and 2015 against his stepdaughter who was under the age of 14 and living with him at the time. Before sentencing in 2021, the probation officer's risk assessment report stated defendant was then "level-II, below average risk." (Boldface & capitalization omitted.) The trial court sentenced defendant on June 2, 2021, to a stipulated term of 12 years, with 1,777 total days credit for time spent in custody. The court also imposed a 10-year protective order for the victim.

On October 27, 2023, Dr. Joseph Bick, the Department of Corrections and Rehabilitation's (Department) director of health care services (director), wrote the trial court a letter stating defendant met the standards for compassionate release. The letter stated defendant was diagnosed with metastatic rectal cancer "with a clear end of life

---

[1]     Undesignated section references are to the Penal Code.

trajectory and one year expected survival." Defendant was "able to feed, bathe and dress himself within an institutional setting" but relied on "a walker to ambulate" and had nerve damage in his hands and feet from chemotherapy. The letter stated defendant requested to live with his sister on release, who agreed to house him and address his medical needs.

A diagnostic report attached to the director's letter and dated October 4, 2023, noted defendant had no serious rule violations while incarcerated, listed his risk assessment score then "as 1-lowest," and had a possible earliest release date of January 27, 2026. (Capitalization omitted.) The diagnostic report also included the parole agent's assessment of defendant's sister's residence. Defendant's sister lived with another sister and her 14-year-old son, both of whom intended to move out of the house. The agent found defendant's sister's house viable, however, the victim told the agent that she intended to file form "CDCR 1707" to contest defendant's living within 35 miles of her residence. Thus, the agent noted if the victim filed the form, "it is possible the residence would no longer be viable and that matter would need to be further investigated at that time." The prosecutor filed an objection to defendant's release asserting the victim had filed the form and defendant's sister's "residence is well within [the] 35 mile[] distance requested by the victim." The prosecutor also argued that "[t]here is no evidence of sex offender treatment or any other counseling while in prison."

The trial court held a hearing on November 6, 2023. Defendant's counsel argued there was no information defendant posed any risk of committing a super strike, while the prosecutor emphasized, "[O]ur most pressing issue with this request is on behalf of the victim, who is very concerned about where he would be released."

The trial court first noted there was no dispute defendant is terminally ill, "so the presumption is that he be released unless the [c]ourt finds that there is an unreasonable risk of danger to public safety under [section] 1170.18. And that means unreasonable risk [defendant] will commit a new violent felony, within the meaning -- I'm

3

paraphrasing of [section] 667." The trial court then found the continuous sexual abuse of a child involved defendant's "step-daughter at the time, who according to the crime report that is attached [to the director's letter] one can see he was grooming for sexual contact." The court continued: "I see nothing in the [Department] packet that shows he's rehabilitated himself to the point where he is not a risk to other minors in the community. So the [c]ourt does find he's an unreasonable risk to public safety and the public at large that he would commit a new violent felony, specifically, child molestation or sexual abuse of minors. [¶] So I'm going to deny his petition at this time." Defendant's counsel asked whether the court's opinion would change if an alternative location for defendant's placement was found more than 35 miles from the victim. The trial court responded: "I found that as a secondary argument, that I didn't actually consider because I see nothing where he's rehabilitated himself and the [c]ourt is well familiar with people who usually commit those offenses are more likely than not to recommit the same offense."

Defendant appeals.[2]

DISCUSSION

I

*The Trial Court Erred By Not Recalling Defendant's Sentence*

Defendant first contends the trial court abused its discretion by relying on the improper consideration defendant had not rehabilitated himself. Defendant argues he was presumed eligible given his diagnosis and this presumption can only be " 'overcome' by evidence that he posed an unreasonable risk of danger to public safety by committing a super strike offense." The People concede the presumption in favor of recall applies to defendant given his diagnosis. But they assert the trial court properly "found a nexus

---

[2] The parties filed a stipulation to waive oral argument, which we treat as a request to waive oral argument. The request is granted.

4

between [defendant's] past and [current] behavior—as demonstrated by his failure to participate in sex offender treatment while incarcerated—and the safety risk he posed." We agree with defendant.

Under section 1172.2, the director begins the compassionate release process by determining a prisoner satisfies one of two medical criteria: (1) The "incarcerated person has a serious and advanced illness with an end-of-life trajectory"; or (2) the "incarcerated person is permanently medically incapacitated with a medical condition or functional impairment that renders them permanently unable to complete basic activities." (§ 1172.2, subds. (a), (b)(1)-(2).) For any prisoner meeting either criterion, the director must recommend to the court their sentence be recalled. (§ 1172.2, subd. (a).)

At the trial court, there "shall be a presumption favoring recall and resentencing under this section if the court finds" facts exist for either criterion. (§ 1172.2, subd. (b).) This presumption "may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of [s]ection 1170.18, based on the incarcerated person's current physical and mental condition." (§ 1172.2, subd. (b).) Section 1170.18 defines unreasonable risk as "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of [s]ection 667." (§ 1170.18, subd. (c).) These felonies are called super strikes and include such felonies as "murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer . . . or any sexually violent offenses or sexual offense committed against minors under the age of 14." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1150-1151.)

"If the court grants the recall and resentencing application, the incarcerated person shall be released by the department within 48 hours of receipt of the court's order, unless a longer time period is agreed to by the incarcerated person." (§ 1172.2, subd. (*l*).) But compassionate release is not available to persons "sentenced to death or a term of life without the possibility of parole." (§ 1172.2, subd. (*o*).)

5

"We review for abuse of discretion the trial court's determination that a [defendant] poses an unreasonable risk of danger to public safety." (*People v. Lewis* (2024) 101 Cal.App.5th 401, 409.)

The trial court here did not properly apply section 1172.2. This section creates a rebuttable presumption in favor of recall such that a medically incapacitated or terminally ill defendant need not establish they are not an unreasonable risk to be eligible. Instead, the prosecutor, as the party opposing the presumption, has "the affirmative obligation to prove [the presumption] false." (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 681.) Thus, a trial court must find, supported by evidence, the defendant is an unreasonable risk. And the statute requires a specific type of risk—an unreasonable risk the defendant will commit a super strike based on his, her, or their *current physical and mental condition*.

Section 1172.2 thus presumes a terminally ill inmate is a low risk to be released from custody because of their diagnosis, even if not fully rehabilitated. This is true for all defendants, even those who have committed a super strike. Terminally ill inmates are ineligible for release only if they have either been "sentenced to death or a term of life without the possibility of parole" (§ 1172.2, subd. (*o*)), or pose an unreasonable risk to commit a super strike notwithstanding their current physical and mental condition. Defendant was not sentenced to death or life without the possibility of parole. Defendant did commit a super strike, and having committed a super strike is certainly relevant in ascertaining the likelihood of committing another super strike. But this alone cannot be sufficient under section 1172.2 because defendant is necessarily a different person from who he was when he committed his super strike crime given his terminal diagnosis. The Legislature has determined this fundamental change in circumstances renders defendant a low risk to be released and imposed a burden on the prosecution to prove otherwise.

Instead of placing the burden with the prosecution to show an unreasonable risk, the trial court here required defendant to "show[] he's rehabilitated himself to the point

6

where he is not a risk to other minors in the community," and made the general observation "people who usually commit those offenses are more likely than not to recommit the same offense." Wholly absent is a consideration of defendant's current physical and mental condition and evidence that despite this condition, he still poses an unreasonable risk. (Cf. *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 83 ["The trial court made no findings as to the unreasonable risk of commission of 'super strike offenses"].) The trial court therefore abused its discretion. (*Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1341 [" 'A trial court abuses its discretion when it applies the wrong legal standards' "].)

The People argue the trial court "impliedly found that, despite any current physical limitations, [defendant] remains a threat of committing a 'super strike.' " But this would be an unsupported finding. For the trial court's rehabilitation analysis to be valid, there must be evidence defendant still poses an unreasonable risk despite his terminal illness. The only evidence the trial court articulated was defendant's past crime and lack of rehabilitation, which, for reasons discussed, is insufficient by itself.

We instead find no evidence in the record defendant now poses an unreasonable risk based on his current health condition. There are no, for example, records of prison violations while terminally ill, negative psychological assessments while terminally ill, or evidence people who have committed defendant's crime generally still pose an unreasonable risk even with metastatic rectal cancer and its associated physical limitations. The only evidence the People assert on appeal supports finding defendant was an unreasonable risk is that defendant "fail[ed] to participate in sex offender treatment while incarcerated." But the record does not support this. As stated in the prosecutor's brief opposing the petition, *there is no evidence whether defendant did or did not attend treatment.* This does not conclusively establish defendant did not attend treatment. And because there is a presumption in favor of recall, it was not defendant's burden to provide evidence of treatment or evidence that not obtaining treatment

7

indicates defendant is not an unreasonable risk based on his current condition. It was instead the prosecutor's burden to provide evidence defendant did not attend treatment and that this indicates an unreasonable risk even considering defendant's current condition. (Cf. *People v. Strother* (2021) 72 Cal.App.5th 563, 571 [under §§ 1170.18 and 1170.126, " ' "[t]he facts upon which the court's finding of unreasonable risk is based must be proven by the [prosecution] by a preponderance of the evidence" ' "].)

There is, instead, evidence defendant is not an unreasonable risk. At the time of sentencing, defendant was listed as a "level-II, below average risk" for reoffending. (Boldface & capitalization omitted.) At the time of the director's letter, two years later, defendant was a level "1-lowest." (Capitalization omitted.) Defendant also had no serious rule violations while incarcerated and must now use a walker to ambulate in his deteriorating state. Further, defendant intends to live with his sister in a home with no children. This evidence may not conclusively establish defendant is rehabilitated, as the trial court found, or that there is no risk he reoffends. But this is evidence defendant is less of a risk than when he was sentenced, before he developed a terminal illness, and is therefore not an unreasonable risk under section 1172.2.

Without any evidence in the record that supports finding defendant is an unreasonable risk to commit a super strike based on his current condition, and with some evidence to the contrary, the presumption in favor of recall cannot be overcome here. We must therefore reverse the trial court's order and also direct the trial court to recall defendant's sentence. (See *People v. Lewis*, *supra*, 101 Cal.App.5th at p. 411 ["Because there is no evidence that [the defendant] poses an unreasonable risk of endangering public safety by committing a super strike offense, section 1172.2[, subdivision ](b) mandates that [the defendant's] sentence be recalled"].)

8

## II

*The Victim Proximity Restriction Does Not Apply To Defendant*

Section 3003, subdivision (f) provides, in part:  "Notwithstanding any other law, if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the Board of Parole Hearings or the Department . . . finds that there is a need to protect the life, safety, or well-being of the victim or witness, an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim."

Defendant argues he may be placed at his sister's home because the 35-mile restriction does not apply to his compassionate release.  The People do not contend otherwise, but instead assert defendant waived this argument by not making it with the trial court and this argument is not relevant because the trial court did not address it.  But we are ordering the trial court to recall defendant's sentence and the agent overseeing defendant's placement believed the 35-mile restriction was generally applicable.  In the interest of judicial economy to guide the trial court and the Department on remand, and the recognition of the urgency of defendant's present situation, we will address this purely legal issue.

" ' " ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.' " '  [Citation.]  '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' "  [Citations.]  If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end.  If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public

policy.' " (*Neptune Management Corp. v. Cemetery & Funeral Bureau* (2024) 100 Cal.App.5th 1007, 1012-1013.)

We conclude section 3003, subdivision (f) does not apply to compassionate release cases because it applies only to inmates who remain under state jurisdiction. "[A] person released from prison is subject to a period of either parole (§ 3000 et seq.) or postrelease community supervision (§ 3450 et seq.)." (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434.) Parole is supervised by the state through the Department. (See §§ 3000.08, subd. (a) [persons released from prison following committing certain crimes are "subject to parole supervision by the [Department]"], 3000.09, subds. (a), (b) [parolees paroled before Oct. 1, 2011 "shall remain under supervision by the [Department]"].) Whereas the Department "shall have no jurisdiction over any person who is under postrelease community supervision." (§ 3457.) Section 3003, subdivision (f) applies to "an inmate who is released on *parole*" and if the state, through the Department or Board of Parole Hearings, finds a need to protect the victim. (§ 3003, subd. (f), italics added.) These are inmates released under state jurisdiction. This is in contrast to section 3003, subdivision (h), which permits a 35-mile restriction if "an inmate . . . is released on parole *or postrelease community supervision* for a stalking offense . . . and if the Board of Parole Hearings or the Department . . . , *or the supervising county agency*" find a need to protect the victim. (Italics added.) The Legislature understood the difference between state and local postrelease jurisdiction and applied subdivision (f) only to defendants subject to state control.

The type of crime typically dictates when parole or postrelease community supervision is applicable. (*People v. Armogeda, supra,* 233 Cal.App.4th at p. 434.) But section 1172.2 mandates "the incarcerated person shall be *released by the department.*" (§ 1172.2, subd. (*l*), italics added.) This is not just from "prison," but from the Department and therefore state jurisdiction completely. Thus, inmates released under

10

section 1172.2 are not those described in section 3003, subdivision (f) because they do not remain under state jurisdiction after release.

Extrinsic aids further support this interpretation. Several reports for Assembly Bill No. 960 (2021-2022 Reg. Sess.), the bill that implemented section 1172.2, noted, "A person whose sentence is recalled under compassionate release, is no longer subject to the jurisdiction of [the Department] and is not placed on supervision, and cannot be returned to prison if the person's health improves." (Assem. Floor Analyses, Concurrence in Sen. Amends. to Assem. Bill No. 960 (2021-2022 Reg. Sess.) as amended Aug. 16, 2022, p. 2; see Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 960 (2021-2022 Reg. Sess.) as amended Aug. 16, 2022, p. 3.) This is consistent with the compassionate release program's "primary purpose [to] sav[e] *the state* money by authorizing the release from prison custody of those inmates who are terminally ill or permanently medically incapacitated and do not pose a threat to public safety." (*Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 582, italics added.) Permitting continued Department jurisdiction would fundamentally undermine this goal.

The practical effect here is that the trial court and the Department may not avoid or even delay defendant's release based on his placement being within 35-miles of the victim. We are mindful and sympathetic of the impact this conclusion may have on the victim of defendant's crime, but the Legislature has decided defendant poses a low risk given his terminal illness. Defendant is also still subject to a 10-year protective order. The Department therefore must release defendant "within 48 hours of receipt of the court's order" recalling defendant's sentence, regardless of section 3003, subdivision (f)'s requirements, and may delay defendant's release only with defendant's agreement. (§ 1172.2, subd. (*l*).)

11

# DISPOSITION

We reverse the trial court's November 6, 2023 order denying defendant compassionate release and direct the trial court to recall defendant's sentence in accordance with section 1172.2.


                                         /s/
                                           ROBIE, Acting P. J.


We concur:


 /s/
BOULWARE EURIE, J.


 /s/                                    ,
MESIWALA J.