[No. F049335. Fifth Dist. Dec. 18, 2006.]

RICHARD PELLERIN, Plaintiff and Appellant, v.
KERN COUNTY EMPLOYEES' RETIREMENT ASSOCIATION,
Defendant and Respondent.

**1100**

### COUNSEL

Elder and Berg and Richard E. Elder, Jr., for Plaintiff and Appellant.

B. C. Barmann, Sr., County Counsel, and Jennifer Esquivel Zahry, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**WISEMAN, J.**—This case presents a question of first impression under the County Employees' Retirement Law of 1937 (Gov. Code,[1] § 31450 et seq.): If an employee qualifies for a service-connected disability retirement based on a statutory presumption that his or her heart condition arose out of his or her employment, and the county employees' retirement association awards the service-connected disability retirement because it cannot rebut the presumption, may the association at the same time issue a finding that the employment did not substantially contribute to the disability? The answer is no.

 Appellant Richard Pellerin (Pellerin) evidently believes the finding has adverse tax consequences for him. The Kern County Employees' Retirement Association's reasons for defending the finding are unclear. In any event, regardless of what the parties' motivations may be, the finding is a legal impossibility. Where an employee has established the applicability of the presumption, an agency must either rebut the presumption or find the disability to be service connected. These are the only options provided for by the statutes. We reverse the trial court's order denying Pellerin's petition for a writ of mandate and direct the court to issue a writ ordering the agency to vacate its finding that Pellerin's employment did not substantially contribute to his disability.

### FACTUAL AND PROCEDURAL HISTORIES

Pellerin was hired as a firefighter by the Kern County Fire Department in 1969. He worked for the department for 31.5 years and rose to the rank of captain. In October 2001, he began to have symptoms of valley fever. In February 2002, he reported lower back pain. A doctor concluded that Pellerin had a partial temporary disability due to these conditions and recommended that he perform light duty, but after another examination a short time later, Pellerin was found able to return to work without restrictions. The valley fever had resolved itself and the back condition was found to be mild. Instead of resuming his full duties, Pellerin applied to the Kern County Employees' Retirement Association (KCERA) for a disability retirement on March 11, 2002, and retired from the department on March 22, 2002.

Pellerin's heart symptoms began in 1996, when he underwent an angiogram because of an abnormal electrocardiogram. The angiogram was nega-

---

[1] Subsequent references are to the Government Code.

tive. He was given a treadmill test in February 2002 (a few weeks before his retirement) as part of an annual physical exam. He became dizzy on the treadmill and the test had abnormal results. Additional tests performed in May 2002 identified other symptoms, but no followup care or testing were undertaken. On October 2, 2002, Pellerin experienced chest pains while walking and reported to a cardiologist the next day. He was found to have arteriosclerosis with a 90 percent blockage of one vessel and a 40 percent blockage of another. Angioplasty was performed immediately on the 90 percent blockage and a stent was inserted, reducing the blockage to zero. After the procedure, Pellerin continued to have some chest pains and other symptoms and was required to take prescription drugs.

Although most of the facts regarding Pellerin's heart condition developed after he filed his application for a disability retirement, the KCERA board considered those facts. Board meeting minutes dated November 14, 2003, report that Pellerin "was granted a service connected disability under Government Code Section 31720.5 at [the] 9/24/03 Board meeting." Section 31720.5, as we will explain further, creates a rebuttable presumption that a heart condition suffered by a firefighter arises from the firefighter's employment.

This was not the result Pellerin wanted. He requested an evidentiary hearing to review the board's determination. In a letter, his counsel asserted that the board should find not only that his heart-related disability was presumptively service connected under section 31720.5, but that his employment actually caused his heart and back conditions within the meaning of section 31720. Pellerin's counsel had explained in an earlier letter that "[s]taff of the KCERA believes that service connection based on GC 31720.5 results in fully tax reportable income but if [Pellerin's] heart disability is found to be service connected under the more general statute (GC31720) there are certain tax advantages to Mr. Pellerin." KCERA appointed a private attorney to serve as hearing officer and a hearing was held on March 2, 2004.

The hearing officer considered the administrative record and live testimony by Pellerin and by KCERA's medical expert, Dr. Boyce Dulan. In his findings of fact and recommended decision, the hearing officer determined that, although a doctor's report stated that Pellerin's back condition was "a direct result of cumulative trauma to his lower back from over 30 years of firefighting duties," Pellerin "failed to provide evidence to link his back problems to his job as a fire captain" because he "did not present any reports of industrial back injury, treatment for a back injury, or time off work for a

back injury" until after he applied for retirement, and because he had other jobs during his career.

In addressing Pellerin's heart condition, the hearing officer accepted the parties' assumption that two distinct legal questions existed: whether Pellerin was entitled to a service-connected disability retirement under the heart-condition presumption set forth in section 31720.5 and whether he was entitled to the same type of retirement under section 31720. The hearing officer stated that Pellerin was entitled to a service-connected disability retirement under the section 31720.5 presumption, but "failed to produce sufficient evidence that his heart problems are substantially related to his work for the Fire Department" within the meaning of section 31720. Although Pellerin's medical expert concluded that the heart condition was caused by his employment, the hearing officer rejected that conclusion based on other evidence: the 1996 angiogram was negative; Pellerin had no hypertension before 2002; he had a family history of heart disease; he gained 30 pounds and had an "inactive lifestyle" after he retired; and he did not have the heart surgery until October 2003. (This last assertion appears to be an error since the hearing officer's recitation of the facts confirms that that surgery was in October 2002.)

Based on these conclusions, the hearing officer issued the following recommended decision: "[G]rant Mr. Pellerin a non-service connected disability for his lower back problems; grant Mr. Pellerin a service connected disability for his heart condition under the statutory presumption set forth in California Government Code section 31720.5; but deny Mr. Pellerin a service connected disability pursuant to California Government Code section 31720."

The KCERA board considered the hearing officer's recommended decision at its meeting on February 23, 2005. The meeting minutes describe the board's action: "Adopt Hearing Officer's Proposed Decision granting service connected disability pension and grant a non-service connected disability on the back. Receive and File Findings of Fact." The minutes do not expressly endorse the hearing officer's finding that Pellerin's disability was service connected within the meaning of section 31720.5 but not within section 31720. They also do not mention the hearing officer's recommendation to grant a service-connected disability retirement under one statute but not the other. Even so, we presume the minutes mean the board intended to adopt all the hearing officer's proposed findings and conclusions.

Pellerin sought review of the agency's decision by filing a petition for a writ of mandate in superior court. In its order denying the petition, the court made these findings:

"1) With respect to the claim of disability arising out of petitioner's heart condition, there was no substantial evidence to show that petitioner's employment substantially contributed to his incapacity. The 1996 angiogram was negative, and there was no subsequent evidence during the period of employment of any heart condition. After retirement, however, petitioner [led] a sedentary lifestyle and gained a significant amount of weight.

"2) With respect to the claim of disability arising out of his back condition, the record is devoid of any evidence linking his back condition to his job duties with respondent."

Pellerin filed this appeal. He does not raise any issue regarding his valley fever, but seeks a determination that his heart and back conditions were both service connected within the meaning of section 31720.

## *DISCUSSION*

Ordinarily, we review a trial court's denial of administrative mandamus for substantial evidence. The trial court's task is to undertake independent review of the evidence in the administrative record, while our task is limited to a determination of whether substantial evidence in the administrative record supports the trial court's ruling. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693]; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) Here, however, a pure question of law is presented. We review that question de novo. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108 [73 Cal.Rptr.2d 523].)

Section 31720 provides:

"Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if:

"(a) The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity . . . ."

Section 31720.5 provides: "If a safety member, a fireman member, or a member in active law enforcement who has completed five years or more of

service . . . develops heart trouble, such heart trouble so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of employment. Such heart trouble so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

■ Section 31720.5 establishes a rebuttable presumption. (See *Robinson v. Board of Retirement* (1956) 140 Cal.App.2d 115, 117 [294 P.2d 724] [considering whether evidence rebutted presumption under former version of § 31720.5 as applied to death benefit].) The effect of some rebuttable presumptions is to shift the burden of proof: Where, absent the presumption, one party would have the burden of proving some proposition, the presumption means the proposition is presumed true unless the other party proves it false. (Evid. Code, §§ 601, 605, 606.) The effect of other rebuttable presumptions is to shift the burden of producing evidence: If the presumption applies to a proposition, the proponent of the proposition need not prove it unless the opposing party produces evidence undermining it, in which case the presumption is disregarded and the trier of fact must decide the question without regard to it. (Evid. Code, §§ 603, 604.) ■ Although we have found no authority directly addressing the point, we conclude that the section 31720.5 presumption is a presumption affecting the burden of proof, not one merely affecting the burden of producing evidence.

■ The Law Revision Commission comment to Evidence Code section 605 states that presumptions affecting the burden of proof are those that are intended not only to facilitate factfinding but also to advance some substantive policy goal. The presumption at issue here is that when firefighters, law enforcement officers, and other safety employees suffer heart conditions, those heart conditions are caused by their employment. This is intended not only to make it easier to find facts in cases of that kind but also to help that class of employees by resolving doubts in their favor and consequently to effectuate the substantive policy goal of applying pension legislation broadly. (See *Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 579 [229 Cal.Rptr. 814, 724 P.2d 500] [stating principle that pension legislation should be applied broadly].) When the section 31720.5 presumption applies, therefore, it means the employee does not have to prove industrial causation; instead, the agency must disprove it.

It is undisputed that the section 31720.5 presumption applies to Pellerin and that KCERA has not rebutted it. The hearing officer found that Pellerin was entitled to a service-connected disability retirement under the presumption, the KCERA board adopted that finding, and KCERA has never challenged it in this litigation. This means that industrial causation is established.

The hearing officer's finding and the trial court's affirmation that there was insufficient evidence of industrial causation to support a service-connected disability retirement under section 31720 were logically inconsistent with this conclusion. The function of section 31720.5 is to provide a means of establishing the causation element of section 31720. Pellerin was entitled to take advantage of those means because he was a firefighter with five or more years of service, he had a heart condition, and the presumption of industrial causation was unrebutted. Under these circumstances, the agency *must* find industrial causation. It may not take the position that the employee "must show by a preponderance of evidence that his job . . . substantially contributed to his heart problems." Doing so improperly shifts the burden of proving industrial causation back onto the employee.

The trial court made the same mistake of law, stating that "there was no substantial evidence to show that petitioner's employment substantially contributed to his incapacity." The correct inquiry was whether KCERA presented sufficient evidence to rebut the section 31720.5 presumption. By failing at every stage to repudiate its own conclusion that Pellerin is entitled to a service-connected disability retirement under section 31720.5, KCERA has conceded that the evidence did not rebut the presumption.

KCERA believes there is room for finding that industrial causation was not established despite the presumption because of a difference in the language describing industrial causation in sections 31720 and 31720.5. Section 31720.5 states that in appropriate cases heart trouble "shall be presumed to arise out of and in the course of employment." Section 31720 also refers to injury or disease "arising out of and in the course of the member's employment," but adds the phrase, "and such employment contributes substantially to such incapacity . . . ." Relying on this difference, the hearing officer stated: "Mr. Pellerin was employed as a fire captain and later developed a 90% blockage in his artery that required a balloon and stent angioplasty. Therefore, his heart problems are presumed to have arisen out of and in the course of his employment, pursuant to Government [C]ode section 31720.5. However, in order to qualify for a service connected disability retirement pursuant to Government [C]ode section 31720, Mr. Pellerin also must show by a preponderance of evidence that his job as a fire captain substantially contributed to his heart problems. Cal. Gov. Code section 31720."

Similarly, KCERA's brief argues: "Although section 31720.5 . . . presumes that Appellant's heart trouble 'arose out of and in the course of his employment,' he is not entitled to receive a disability under section 31720 unless his employment as a firefighter 'contributed substantially to his incapacity.' (Cal. Gov't Code section 31720.)"

█ These assertions reflect two misconceptions. First, it is inconsistent to say an employee is both granted (under § 31720.5) and denied (under § 31720) a service-connected disability retirement. Sections 31720 and 31720.5 are parts of a single scheme for making a single decision: whether an employee is entitled to a service-connected disability retirement. Section 31720 sets forth the factual elements that must exist to qualify an employee for a service-connected disability retirement. Section 31720.5 sets up an evidentiary rule—the rebuttable presumption of industrial causation applicable to certain employees with heart conditions—to be used in establishing one of those factual elements. Where the presumption applies and is unrebutted, it is incorrect to say that the employee is still not entitled to a retirement "under section 31720" even though he is entitled to one "under section 31720.5" because the employee did not prove industrial causation. An employee to whom the presumption applies under section 31720.5 has established the industrial causation element of section 31720 unless the presumption is rebutted—which was not done here.

Second, despite the difference in language, the two sections do not refer to different standards of industrial causation. The phrase "and such employment contributes substantially to such incapacity" in section 31720 does not add another element of causation that an employee to whom the presumption applies still bears the burden of proving. This phrase was added to section 31720 by amendment in 1980; before that, the two sections were parallel, referring simply to disabilities arising out of and in the course of employment. (See *Bowen v. Board of Retirement, supra*, 42 Cal.3d at pp. 573–574, 574–575.) The amendment was a reaction to a holding by a Court of Appeal that section 31720 only required that employment be *a* cause of an employee's disability, not *the* cause, and holdings of some other cases interpreting *this to mean that* "even an infinitesimal or inconsequential work-related contribution to disability would suffice . . . ." (*Bowen v. Board of Retirement, supra*, at p. 576.) The Supreme Court held that the amendment did not alter the standard for determining industrial causation under section 31720 and, with the exception of the case law just described, only affirmed existing law. (*Bowen v. Board of Retirement, supra*, at pp. 574, 578.) The standard, before and after the 1980 amendment, was that, although the causal connection between the job and the disability may be small, it must be " 'real and measurable,' " and there must be substantial evidence of this fact. (*Id.* at pp. 577–578, italics omitted.) That standard, the Supreme Court stated, "comports with the principle that pension legislation be applied fairly and broadly." (*Id.* at p. 579.)

█ Since the 1980 amendment did not alter the industrial-causation standard in section 31720, the standard in section 31720.5 should still be read as paralleling that in section 31720. The standard set forth in *Bowen,*

therefore, states both what an applicant must prove to qualify for a service-connected disability retirement under section 31720 and what the section 31720.5 presumption presumes. As a matter of law, an agency cannot concede that the section 31720.5 presumption applies and is unrebutted and then go on to find that industrial causation under section 31720 has not been shown.

Even in the absence of a concession by KCERA, we would still conclude that the record does not contain evidence sufficient to support a finding that the presumption was rebutted. In this regard, the facts and holding of *Robinson v. Board of Retirement, supra,* 140 Cal.App.2d 115, are instructive. There, the widow of a qualifying sheriff's department employee sought death benefits under section 31781. The heart-trouble presumption of a former version of section 31720.5 (with slight differences in wording that do not affect the analysis) applied to that benefit and the employee was entitled to the presumption. (*Robinson v. Board of Retirement, supra,* at pp. 116–117.) The agency denied the benefit and the trial court denied mandamus on the ground that the presumption was rebutted. The evidence in the record showed that the employee worked for the sheriff's department for more than 15 years, was on military leave of absence from 1940 to 1946 and again from 1950 to 1953, and died of coronary sclerosis in 1953 while still on leave. The trial court took judicial notice of the fact that the employee must have had physical examinations at the start of each period of military service; it inferred that the examinations must have found no significant heart problems since the employee went on to serve. On that basis, the trial court held that the heart trouble must have arisen during the last three years of the employee's life, while he was serving in the military, and not while he was employed by the sheriff's department. (*Id.* at p. 117.)

The Court of Appeal reversed, concluding that the employee could have been permitted to serve even if his military physicals found a slight heart condition. The court continued: "Again, coronary sclerosis implies hardening of the walls of coronary arteries, a slow process; it is characteristic of heart troubles that they may be latent for a long time and suddenly and unexpectedly manifest themselves. It seems clear that the facts of a military examination and lapse of three years before coronary sclerosis manifested itself constitute no evidence at all because they do no more than prove a possibility, leaving the trier of the facts to weigh that possibility against the statutory presumption. A bare possibility is not evidence [citations]; it cannot be accepted as 'evidence to the contrary' of the presumption." (*Robinson v. Board of Retirement, supra,* 140 Cal.App.2d at pp. 117–118.)

The evidence on which the hearing officer and the trial court relied in this case is not much stronger than the evidence in *Robinson*. The negative 1996 angiogram taken to follow up on the abnormal electrocardiogram did not necessarily prove that there was no incipient heart condition. Even if it had proven that, it was taken six years before Pellerin retired. The lack of hypertension before 2002 also does not show that heart disease was not developing. Further, because arteriosclerosis is a slow process, the seven-month interval between Pellerin's retirement and his surgery is not evidence that the disease did not arise out of his employment. The shortness of this interval undermines the suggestion by the hearing officer and trial court that Pellerin's postretirement 30-pound weight gain and sedentary lifestyle were the cause of his arteriosclerosis. Finally, if the hearing officer's reference to Pellerin's family history of heart disease was intended to show that his disease might have been caused by a preexisting genetic condition, section 31720.5 rules out this type of speculation by providing that heart trouble "shall in no case be attributed to any disease existing prior to" its manifestation. As in *Robinson*, the hearing officer and trial court relied on facts that proved no more than a possibility of a lack of industrial causation. This is not sufficient to overcome the section 31720.5 presumption.

For all these reasons, the trial court erred in denying Pellerin's petition for a writ of mandate. Because the section 31720.5 presumption was unrebutted, the agency was required as a matter of law to find that the industrial-causation element of section 31720 was present. In light of the admitted applicability of the presumption, the lack of rebuttal, and the uncontested proof of the remaining elements, the agency was required to grant Pellerin a service-connected disability retirement pursuant to section 31720. Since Pellerin is entitled to a service-connected disability retirement because of his heart condition, we do not need to address his claim about his back condition and will not disturb the trial court's ruling on that issue.

Finally, although no question of tax law is before us and we express no opinion on any tax question, we observe that Pellerin's counsel's belief that benefits awarded pursuant to a rebuttable presumption of industrial causation are taxable may be unfounded. (See Rev. Rul. 85-105, 1985-2 C.B. 53 ["A pension received by a disabled fire fighter under a state statute that creates a rebuttable presumption the disability was service connected is excludable from gross income to the extent the pension is not attributable to length of service"; presumption merely shifts burden of proof and agency board must still make finding that disability was service connected when awarding benefits].)

## *DISPOSITION*

The judgment denying the petition is reversed with respect to the heart condition and the matter remanded to the trial court. The court shall issue a peremptory writ of mandate directing KCERA to set aside its finding that Pellerin's heart disability was not shown to be service connected and to enter an order awarding him a service-connected disability retirement for his heart condition pursuant to section 31720, as well as section 31720.5. The judgment is affirmed with respect to the back condition. Pellerin shall recover his costs on appeal.

Harris, Acting P. J., and Hill, J., concurred.