[No. B222290. Second Dist., Div. One. Nov. 19, 2010.]

KAREN SAMEYAH, Plaintiff and Appellant, v.
LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Respondent.

COUNSEL

Lewis, Marenstein, Wicke, Sherwin & Lee, Thomas J. Wicke and Allison E. Barrett for Plaintiff and Appellant.

Robert Van Der Volgen and James J. Castranova for Defendant and Respondent.

OPINION

**CHANEY, J.**—Karen Sameyah appeals from a judgment entered after the trial court denied her petition for peremptory writ of mandate. By her petition, Sameyah sought an order compelling the Board of Retirement (Board) of the Los Angeles County Employees Retirement Association (LACERA) to reverse its decision denying her application for service-connected survivor death benefits. In January 2004, Sameyah's husband died of Burkitt's lymphoma, after serving for seven years as a deputy sheriff with the Los Angeles County Sheriff's Department. Sameyah received a non-service-connected survivor's allowance.

Exercising its independent judgment, the trial court found, and the parties agree, that Sameyah established that her husband's lymphoma is presumed to have arisen out of and in the course of his employment, within the meaning of the cancer presumption set forth in Government Code section 31720.6, subdivision (a).[1] The court also found that Sameyah demonstrated that her husband was exposed to known carcinogens as a result of his performance of the duties of a deputy sheriff, within the meaning of subdivision (b) of section 31720.6. Ultimately, the court concluded that the Board rebutted the cancer presumption by making the requisite showing outlined in subdivision (c) of section 31720.6—by establishing the primary site of the lymphoma and by demonstrating that the carcinogens to which David Sameyah was exposed as a result of the performance of his job duties were not reasonably linked to his Burkitt's lymphoma.

We find that substantial evidence supports the trial court's decision denying Sameyah's petition. In deciding this case, we consider and apply principles set forth in appellate decisions interpreting other rebuttable presumptions, including the "heart trouble" presumption in section 31720.5 and the workers' compensation cancer presumption in Labor Code section 3212.1. There are no appellate cases resolving disputes under section 31720.6.

---

[1] Further statutory references are to the Government Code unless otherwise indicated.

## BACKGROUND[2]

I. *David Sameyah's Work History and Job-related Exposures*

David Sameyah began working as a deputy sheriff in June 1996. After completing his training, he went to work at North County Correctional Facility (NCCF). There, he secured and transported inmates throughout the jail facility and he also worked at a desk. Sameyah recalled her husband telling her that he was present when a tear gas bomb was used to stop a "brawl" in the jail. He was exposed to the gas.[3]

In or about 1999 or 2000, Mr. Sameyah went to work at Lennox Station as a patrol officer.[4] According to his supervisor, Mr. Sameyah spent about 90 percent of his work time outside of the office in the field. He was tasked with putting gas in his patrol car. He also was responsible for apprehending suspects. Crimes in the area he served typically involved drugs and violence. Mr. Sameyah's supervisor recalled that there were occasions when his deputies had arrested individuals who were HIV positive and/or homeless.

According to Sameyah, when her husband came home from work, his arms were covered with dust and his uniform was dirty and had black stains on it that looked like soot. The uniform smelled like gasoline and exhaust. Mr. Sameyah told her that the dirt and stains on his uniform were from jet fuel, gasoline and apprehending suspects.

Mr. Sameyah's supervisor estimated that Lennox Station was located about 500 yards from the 105 Freeway and about one mile from the 405 Freeway, near Los Angeles International Airport. When Mr. Sameyah's supervisor was in the parking lot outside the station, he could hear the traffic from the freeway and the jets, and he could "feel the jet stream." He noticed "[b]lack oily spots" on his car that sometimes smelled like lighter fluid.

There was a generator at Lennox Station that could be used to supply power to the station in the event of an outage. On the occasions that it was

---

[2] Throughout this opinion, we use the name "Sameyah" to refer to appellant, and we use the names "David Sameyah" or "Mr. Sameyah" to refer to appellant's deceased husband.

[3] At the administrative hearing in this matter, Sameyah testified about her husband's work-related exposures. A supervising lieutenant also testified about David Sameyah's exposures at Lennox Station.

[4] This date is taken from Sameyah's testimony at the administrative hearing about her husband's work history. There is other evidence in the administrative record (medical and disability retirement evaluation reports) indicating that David Sameyah started working at Lennox Station in July 1997. The particular date is not material to our resolution of the issues. On appeal, Sameyah refers to the later date, as we have.

activated and operating, it produced smoke that smelled like diesel exhaust. At times, Mr. Sameyah was asked to go to the generator to find out why it had activated on its own.

Mr. Sameyah's supervisor believed that "there was asbestos pretty much throughout" Lennox Station. He recalled health inspections at the station concerning asbestos.

Mr. Sameyah also worked as the range master of the mobile shooting range at Marina Station. At least quarterly, deputies were required to qualify their guns. This required them to fire about 30 rounds. At the range, which was an enclosed trailer, Mr. Sameyah was exposed to lead from the gunpowder in the air. He was responsible for cleaning up the casings which were ejected when the guns were fired. The casings had gunpowder residue on them. Mr. Sameyah worked at the range "on a quarterly basis."

## II. *Illness and Diagnosis of Burkitt's Lymphoma*

In or about December 2002, David Sameyah experienced abdominal pain. An examination and testing indicated that he had an ulcer and elevated Helicobacter pylori bacteria. After treatment, his abdominal pain continued.

In March 2003, a biopsy of the ulcer indicated gastric lymphoma, which was associated with Mr. Sameyah's elevated Helicobacter pylori bacteria level. Mr. Sameyah had a large gastric mass. He was treated with chemotherapy, radiation, a partial gastrectomy and a stem cell transplant. It was later determined that Mr. Sameyah had Burkitt's lymphoma.

Mr. Sameyah worked as a deputy sheriff at Lennox Station until July 2003. He died on January 7, 2004. He was 47 years old.

## III. *Denial of Application for Service-connected Death Benefits*

In April 2004, Sameyah filed an application with LACERA for service-connected survivor death benefits. She stated that her husband was exposed to carcinogens in the course of his work at NCCF, Lennox Station and the shooting range.

LACERA asked James A. Padova, M.D., to review David Sameyah's medical records and evaluate whether his death related to his work as a deputy sheriff. Dr. Padova is a certified medical oncologist, who has diagnosed and treated cancer patients for more than 30 years. On December 1, 2004, Dr. Padova issued a report concluding that Mr. Sameyah's death "from

the complications of a high-grade Burkitt's type lymphoma" was "non-service connected." Dr. Padova opined: "Based on the information that I reviewed, I do not believe there is evidence to incriminate any work-related exposures in the causation of this particular patient's malignant lymphoma and his death. First of all, he first became symptomatic from his gastric lymphoma some time during the year 2002, within five years from his first date of employment. It is well known that cancer causing agents usually require a relatively long period known as the latency period, to be present between the time of the injurious exposure and the clinical detection of the cancer in question. That latency period is usually in the order of 10–15 years or more. . . .

"In fact, Burkitt's lymphoma has been shown to be associated with various and relatively specific gene changes that lead to the development of this type of lymphoma. Herpes viruses such as the Epstein-Barr virus have been shown to cause this type of lymphoma. *Helicobacter pylori* infection within the stomach has been shown to cause other types of stomach lymphomas. It is likely that in Mr. Sameyah's case, that one of these infectious agents contributed to the causation of the lymphoma that ultimately caused his death . . . ."

LACERA determined that the cancer presumption in section 31720.6 was rebutted by evidence demonstrating that the carcinogens to which David Sameyah was exposed as a result of the performance of his job duties were not reasonably linked to Burkitt's lymphoma. LACERA also found that the primary site of the cancer was the stomach. Establishment of the primary site of the cancer is a prerequisite for rebutting the cancer presumption. (§ 31720.6, subd. (c).) In February 2005, the Board denied Sameyah's application and continued the non-service-connected survivor's allowance she had been receiving. Sameyah appealed the decision.

On May 30, 2005, Sameyah's expert, Jeffrey A. Hirsch, M.D., issued a report in which he concluded that David Sameyah's illness was "industrial in origin." Dr. Hirsch is board certified in internal medicine. He is not an oncologist. After a lengthy review of the medical records, Dr. Hirsch began the discussion section of his report as follows:

"The decedent was struck down by a relatively rare form of lymphoma, Burkitt's lymphoma, which occurs around 300 times (new cases) per year in America. The highest incidence of Burkitt's lymphoma occurs in Central Africa, where it is a relatively common childhood cancer. . . .

"Prior research has indicated that Epstein-Barr virus, a common viral pathogen, is a risk factor for the development of Burkitt's especially as it

strikes children in Central Africa. As a sworn peace officer, the decedent had a far higher risk of exposure to biologic agents and microbes as compared to individuals pursuing activities other than law enforcement. The decedent's patrol career caused frequent close contact with several categories of individual[s] known to harbor infectious disease at a higher rate. These categories of individual[s] included incarcerated individuals with poor personal hygiene, IV drug users, patients with HIV, and the homeless populations.

"Additionally decedent had direct occupational exposures to substances linked to increased risk of lymphoma. Burkitt's lymphoma is categorized more generally as a malignant B cell lymphoma (a type of non-Hodgkin's lymphoma). As can be seen from the research abstracts appended to this report, benzene and other solvents increase the risk for lymphoma. Benzene is listed by the IARC (International Agency for Research on Cancer) as a known human carcinogen. Importantly, benzene exposure is heightened in those individuals exposed to diesel particulates. Mr. Sameyah suffered increased exposure to this carcinogenic solvent due to patrol duties with windows down, work in proximity to the 405 Freeway, and significant exposure to jet fuel." Dr. Hirsch also noted Mr. Sameyah's exposure to lead and possible exposure to asbestos and radio transmission equipment.

In a supplemental report, dated December 7, 2007, Dr. Hirsch discussed his opinion that a primary site for David Sameyah's Burkitt's lymphoma cannot be established within the meaning of section 31720.6, subdivision (c). Dr. Hirsch stated: "First of all, it should be noted that Burkitt's lymphoma is a diffuse lymphomatous cancer process that involves the entire lymphatic system. Abnormal clones of the cancerous cell type are typically found in widespread distribution in the body. Mr. Sameyah's Burkitt's lymphoma manifested itself in the wall of the stomach; however, this was not the 'primary site' of the tumor. Rather, the 'tumor' was present in the entire white blood cell system coursing through Mr. Sameyah's body. The cancerous process then evolved most briskly in the wall of the stomach; however, this is not the 'primary site' of the tumor. Rather, the lymphomatous process occurred throughout Mr. Sameyah's body. Therefore, I do not believe there is a primary site of this cancer."

Dr. Padova also discussed the primary site of David Sameyah's Burkitt's lymphoma in a supplemental report, dated May 9, 2007. Dr. Padova concluded: "It is quite clear that the primary site of this patient's tumor was his stomach. The primary lymphoma mass was initially symptomatic and detected in his stomach and, in fact, there is no doubt that the patient's initial diagnosis was a Burkitt's type of lymphoma originating in his stomach."

In a subsequent supplemental report, dated January 30, 2008, Dr. Padova stated: "After reviewing Dr. Hirsch's report of 12/7/07, my comments are as

follows. In terms of the primary site of presentation of this patient's lymphoma, the primary site was in the stomach. Although later other sites clinically expressed the malignant lymphoma, the convention is to stage lymphoma as to the site presenting at the time of initial diagnosis. In this case, the primary site was extranodal and did not present as nodal or lymphatic sites but extranodal and, in this case, the area was the stomach. Therefore it is correct to consider that the primary site of this patient's lymphoma was the stomach. . . ." Dr. Hirsch disagreed with this analysis.

An administrative hearing was held. After hearing witness testimony and oral argument, the referee issued her proposed findings of fact and recommended decision. She concluded that the Board rebutted the cancer presumption in section 31720.6, and Sameyah was not entitled to service-connected survivor benefits. In October 2008, the Board adopted the referee's recommended decision. The Board decided to continue Sameyah's non-service-connected survivor's allowance.

## IV. *Denial of Petition for Writ of Mandate*

Sameyah filed a petition for peremptory writ of mandate, seeking an order compelling the Board to reverse its decision denying her application for service-connected survivor death benefits. In her points and authorities supporting the petition, Sameyah argued the Board had not proven there are no reasonable links between her husband's Burkitt's lymphoma "and his multiple carcinogenic exposures" (which she defined in her argument as "asbestos, lead, benzene, burnt jet fuel, other fuel oils, gasoline, diesel and engine exhaust, radio transmissions and petroleum solvents"). Although Sameyah referenced in her statement of facts her husband's viral and bacterial exposures and diagnoses, she did not focus on these exposures in arguing that the Board had not rebutted the cancer presumption in section 31720.6.

Sameyah also argued that the Board had not established the primary site of her husband's lymphoma, a requirement for rebutting the cancer presumption. She asserted: "While Mr. Sameyah's Cancer first manifested in the stomach, it was located in the mucosa and lymphoid tissue of the stomach; not the organ proper. [The Board]'s claims that the stomach was the primary site are not supported by substantial evidence. Quite simply, Mr. Sameyah did not have stomach cancer. He had lymphoma. The lymphatic system (mucosa and tissue) are unlike organs which inherently do constitute primary sites. The stomach was not principal to Decedent's lymphoma."

After an independent review of the administrative record, the trial court denied Sameyah's petition.[5] The court found that David Sameyah's Burkitt's lymphoma was presumed to be service-connected under section 31720.6, subdivision (a). The court also found that Sameyah demonstrated that her husband's duties as a deputy sheriff exposed him to "lead, benzene, diesel exhaust, gasoline, fuel oils, jet fuel and petroleum solvents," within the meaning of subdivision (b). Ultimately, however, the court decided that the Board rebutted the presumption under subdivision (c). The court found the evidence showed "that Burkitt's type lymphoma is caused by a virus [citations], and therefore it is not 'reasonably linked' to the carcinogens to which petitioner's husband was exposed by his job duties."[6] The court also found that the Board established the primary site of the lymphoma.

The court explained: "The independent judgment of the court is that the presumption that the cancer arose out of or in the course of employment was rebutted by evidence that the cancer was caused by a virus and not by any of the carcinogens to which petitioner's husband was exposed by his job duties, and that the primary site of the cancer was in the lining of the stomach. Evidence to the contrary is limited to speculation by petitioner's expert that the carcinogens to which petitioner's husband was exposed could possibly have also contributed to the cancer. Such speculation is entitled to little or no weight as compared with the direct evidence that the cancer was first observed in a stomach ulcer that was caused by a virus."

## DISCUSSION

### I. *Standard of Review*

"Ordinarily, we review a trial court's denial of administrative mandamus for substantial evidence. The trial court's task is to undertake independent

---

[5] The trial court issued a tentative decision in Sameyah's favor, deciding that the rebuttable presumption in section 31720.6 does not apply to subdivision (b). The court concluded that, because Sameyah demonstrated that her husband was exposed to a known carcinogen as a result of performance of job duties within the meaning of subdivision (b), she automatically was entitled to service-connected survivor death benefits, and the Board would not have an opportunity to rebut the presumption under subdivision (c).

The court gave the parties an opportunity to brief the issue, and changed its decision. The parties agree that the rebuttable presumption in section 31720.6 applies to the entire statute. Once the pension member demonstrates a work-related carcinogenic exposure, the Board may rebut the cancer presumption by establishing the primary site of the cancer and by demonstrating that the exposure was not reasonably linked to the cancer. This is not a disputed issue on appeal.

[6] At the hearing on the petition, Sameyah tried to establish through oral argument that her husband's work as a deputy sheriff exposed him to viruses that could have caused his Burkitt's lymphoma. The trial court was not persuaded by this showing.

review of the evidence in the administrative record, while our task is limited to a determination of whether substantial evidence in the administrative record supports the trial court's ruling." (*Pellerin v. Kern County Employees' Retirement Assn.* (2006) 145 Cal.App.4th 1099, 1105 [52 Cal.Rptr.3d 201].) We review "a pure question of law" de novo. (*Ibid.*)

Sameyah contends that the de novo standard of review applies to this dispute, based on her assertion that the trial court erred in its analysis of whether the Board rebutted the cancer presumption in section 31720.6. We disagree with her contention. As Sameyah acknowledges, the question before us is whether the Board rebutted the presumption by establishing the primary site of the lymphoma and demonstrating that the carcinogens to which David Sameyah was exposed at work are not reasonably linked to Burkitt's lymphoma. This is a question of disputed fact to which the substantial evidence standard of review applies.

## II. *Cancer Presumption of Section 31720.6*

Section 31720.6 provides, in pertinent part: "(a) If a safety member, a firefighter, or a member in active law enforcement who has completed five years or more of service under a pension system established pursuant to Chapter 4 (commencing with Section 31900) or under a pension system established pursuant to Chapter 5 (commencing with Section 32200) or both or under this retirement system or under the Public Employees' Retirement System or under a retirement system established under this chapter in another county, and develops cancer, the cancer so developing or manifesting itself in those cases shall be presumed to arise out of and in the course of employment. The cancer so developing or manifesting itself in those cases shall in no case be attributed to any disease existing prior to that development or manifestation.

"(b) Notwithstanding the existence of nonindustrial predisposing or contributing factors, any safety member, firefighter member, or member active in law enforcement described in subdivision (a) permanently incapacitated for the performance of duty as a result of cancer shall receive a service-connected disability retirement if the member demonstrates that he or she was exposed to a known carcinogen as a result of performance of job duties.

" 'Known carcinogen' for purposes of this section means those carcinogenic agents recognized by the International Agency for Research on Cancer, or the Director of the Department of Industrial Relations.

"(c) The presumption is disputable and may be controverted by evidence, that the carcinogen to which the member has demonstrated exposure is not

reasonably linked to the disabling cancer, provided that the primary site of the cancer has been established. Unless so controverted, the board is bound to find in accordance with the presumption. This presumption shall be extended to a member following termination of service for a period of three calendar months for each full year of the requisite service, but not to exceed 60 months in any circumstance, commencing with the last date actually worked in the specified capacity."

There is no dispute that the presumption set forth in subdivision (a) of section 31720.6 applies in this case. David Sameyah served as a deputy sheriff for more than five years, and he developed Burkitt's lymphoma during those years on the job. The issues to be resolved on appeal concern subdivisions (b) and (c) of section 31720.6 (which carcinogens David Sameyah was exposed to at work and whether the Board rebutted the cancer presumption). Before reaching those issues, we discuss other, similar statutory presumptions and case law interpreting them, because no case law to date has interpreted section 31720.6.

III. *Similar Statutory Rebuttable Presumptions*

A. *Heart trouble presumption in section 31720.5*

The legislative history of section 31720.6 indicates that the purpose of the bill was to prescribe a presumption for cancer in the County Employees Retirement Law of 1937 (§ 31450 et seq.) that was similar to the "heart trouble" presumption, which was already codified in section 31720.5.[7] (Legis. Counsel's Dig., Sen. Bill No. 558, 5 Stats. 1999 (1999–2000 Reg. Sess.) Summary Dig., p. 83.) In *Pellerin v. Kern County Employees' Retirement Association, supra,* 145 Cal.App.4th at page 1103, the Court of Appeal explained that section 31720.5 "creates a rebuttable presumption that a heart condition suffered by a firefighter [or safety or law enforcement member] arises from the firefighter's employment." The court concluded that the presumption is one "affecting the burden of proof, not one merely affecting the burden of producing evidence." (145 Cal.App.4th at p. 1106.) "When the section 31720.5 presumption applies, . . . it means the employee does not

---

[7] Section 31720.5 provides, in pertinent part: "If a safety member, a fireman member, or a member in active law enforcement who has completed five years or more of service under a pension system established pursuant to Chapter 4 (commencing with Section 31900) or under a pension system established pursuant to Chapter 5 (commencing with Section 32200) or both or under this retirement system or under the State Employees' Retirement System or under a retirement system established under this chapter in another county, and develops heart trouble, such heart trouble so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of employment. Such heart trouble so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

have to prove industrial causation; instead the agency must disprove it." (*Ibid.*) The presumption "effectuate[s] the substantive policy goal of applying pension legislation broadly" by making it easier for employees to prove their cases and resolving doubts in their favor. (*Ibid.*) A showing by the agency of "a possibility of a lack of industrial causation" is "not sufficient to overcome the section 31720.5 presumption." (*Id.* at p. 1110.)

### B. *Workers' compensation cancer presumption in Labor Code section 3212.1*

As the parties acknowledge, the cancer presumption at issue in this case under section 31720.6 is the same as the workers' compensation cancer presumption in Labor Code section 3212.1,[8] in all material respects relevant to the issues on appeal. The parties cite case law interpreting the Labor Code section 3212.1 presumption in addressing whether the Board has rebutted the cancer presumption in this case.

In *City of Long Beach v. Workers' Comp. Appeals Bd.* (2005) 126 Cal.App.4th 298, 305 [23 Cal.Rptr.3d 782] (*Garcia*), Division Three of this district addressed "the question of what showing an employer must make to rebut the presumption" in Labor Code section 3212.1. The case involved a police officer who developed kidney cancer after about 11 years on the job where he was exposed to benzene from filling his patrol car with gasoline. (126 Cal.App.4th at pp. 306, 320.) The Court of Appeal held that, "to rebut the presumption, the employer must prove the absence of a reasonable link between the cancer and the industrial exposure to the carcinogen. A mere showing of absence of medical evidence that the carcinogen has been shown to cause the particular cancer contracted by the employee is not sufficient to rebut the presumption." (*Id.* at pp. 305–306.)[9] The court reasoned that the

---

[8] Labor Code section 3212.1, which applies to active firefighters and peace officers, provides, in pertinent part:

"(b) The term 'injury,' as used in this division, includes cancer, including leukemia, that develops or manifests itself during a period in which any member described in subdivision (a) is in the service of the department or unit, if the member demonstrates that he or she was exposed, while in the service of the department or unit, to a known carcinogen as defined by the International Agency for Research on Cancer, or as defined by the director. [¶] . . . [¶]

"(d) The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by evidence that the primary site of the cancer has been established and that the carcinogen to which the member has demonstrated exposure is not reasonably linked to the disabling cancer. Unless so controverted, the appeals board is bound to find in accordance with the presumption. This presumption shall be extended to a member following termination of service for a period of three calendar months for each full year of the requisite service, but not to exceed 60 months in any circumstance, commencing with the last date actually worked in the specified capacity."

[9] The establishment of the primary site of the cancer was not an issue in this case.

"*absence* of medical evidence linking a known carcinogen with a particular form of cancer simply represents a void of information, and cannot be considered proof a reasonable link does *not* exist." (*Id.* at p. 316.) The court concluded that "the Legislature intended to remove the burden from employees and enable them to obtain benefits even when it was not possible to prove the cancer was linked to the particular carcinogen." (*Id.* at p. 315.)

"[A]n employer demonstrates the absence of a reasonable link if it shows no connection exists between the carcinogenic exposure, or that any such possible connection is so unlikely as to be absurd or illogical. . . . The statute requires proof no *reasonable* link exists. A link that is merely remote, hypothetical, statistically improbable, or the like, is not a reasonable link. The employer need not prove the absence of a link to a scientific certainty; instead, it must simply show no such connection is reasonable, i.e., can be logically inferred." (*Garcia, supra*, 126 Cal.App.4th at p. 316.)

Addressing the ways in which an employer might rebut the presumption, the court stated: "We agree that the burden placed upon the employer is a difficult one. However, we disagree that the standard is impossible to meet. If medical studies are available showing that particular cancers have been shown *not* to be caused by certain carcinogens, such evidence, if credited, would suffice. But, even assuming such studies are not readily available, the employer has other avenues of proof available to it. In some cases the employer will be able to demonstrate it is highly unlikely the cancer was industrially caused because the period between the exposure and the manifestation of the cancer is not within the cancer's latency period. [Citation.] Further, the nature of the manifestation, or other medical evidence, may be sufficient to show the lack of connection. . . . Other methods of proof, not at issue before us here, may exist as well. For example, perhaps it would be possible for an employer to show that the quantity of the carcinogen to which the employee was exposed, or length of time of the exposure, was too small or too brief to have had any detrimental effect." (*Garcia, supra*, 126 Cal.App.4th at pp. 317–318, fn. omitted.)

In reviewing for substantial evidence the administrative decision denying reconsideration of the workers' compensation judge's findings and award of benefits, the appellate court in *Garcia* found: "Because the Agreed Medical Examiner's (AME) opinion that Garcia's cancer was not occupationally related was based upon the absence of a known cause for kidney cancer and the absence of medical studies showing a link between kidney cancer and benzene, the City failed to rebut the statutory presumption." (*Garcia, supra*, 126 Cal.App.4th at p. 306.) The court cited testimony from the examiner's deposition, stating: " 'Can I show you that his kidney cancer was certainly or with reasonable medical probability not caused by any of these occupational

exposures? And the answer to that basically is no. I can't except what I've already stated; namely, that the medical literature in general does not support any linkage between them. I can't tell you it cannot happen or doesn't happen or never happens. [¶] . . . [¶] Basically I can say there's no linkage, no positive linkage [between benzene and kidney cancer]. I can't say there's no negative linkage and so there's always the potential of a relationship.' " (*Id.* at p. 307.)

## IV. *Exposure to Known Carcinogens at Work*

■ To qualify for service-connected survivor death benefits, Sameyah had to prove that her husband "was exposed to a known carcinogen as a result of performance of job duties." (§ 31720.6, subd. (b).) The statute makes clear it is the pension member's burden to prove the work-related carcinogenic exposure.

The evidence demonstrates that David Sameyah was exposed to carcinogens as a result of his work as a deputy sheriff. As the trial court found, he was exposed to "lead, benzene, diesel exhaust, gasoline, fuel oils, jet fuel and petroleum solvents."[10] There is no dispute that these are carcinogens.

Helicobacter pylori bacterium also is a carcinogen. Dr. Padova, the Board's expert, stated that this bacterium "has been shown to cause other types of stomach lymphomas." Although the evidence indicates that Mr. Sameyah was exposed to Helicobacter pylori, there is no indication that he was exposed to this bacterium as a result of performance of his job duties.

Epstein-Barr virus is another carcinogen. Both Dr. Padova and Sameyah's expert, Dr. Hirsch, stated that Epstein-Barr virus is a cause or risk factor for Burkitt's lymphoma. There is no evidence that Mr. Sameyah was exposed to this virus as a result of his job duties. The medical records do not indicate that he was ever diagnosed with Epstein-Barr virus.

Below Sameyah focused on her husband's chemical exposures. On appeal, she tries to make the case that he was exposed through his work to carcinogenic viral or bacterial agents. Evidence that Mr. Sameyah *might* have come into contact with an inmate or suspect who *might* have had a virus is not sufficient evidence of a carcinogenic exposure.

---

[10] Sameyah claims that her husband was exposed to asbestos and radio transmissions at Lennox Station. Although his supervisor testified that there was asbestos throughout the building, there was no evidence that the asbestos fibers were airborne. Evidence in the record indicates that asbestos poses no health threat unless the fibers become airborne. In any event, Sameyah's expert did not link exposure to asbestos or radio transmissions with the development of David Sameyah's Burkitt's lymphoma.

Sameyah demonstrated that her husband's work exposed him to lead, benzene, diesel exhaust, gasoline, fuel oils, jet fuel and petroleum solvents. In the last part of this opinion, we discuss whether there is a reasonable link between any of these chemical agents and Mr. Sameyah's Burkitt's lymphoma. Sameyah did not demonstrate that her husband was exposed through his work to any carcinogenic viral or bacterial agent.

## V. *Board's Rebuttal of the Presumption*

### A. *Primary site of the lymphoma*

To rebut the cancer presumption, the Board must establish the primary site of the cancer. (§ 31720.6, subd. (c).) "Primary site" is not defined in the statute. The trial court had before it expert medical testimony about primary site. The trial court found that the Board established that the primary site of David Sameyah's Burkitt's lymphoma was the stomach. Substantial evidence in the administrative record supports this finding.

Dr. Padova, a certified medical oncologist, who has diagnosed and treated cancer patients for more than 30 years, concluded that the primary site of Mr. Sameyah's Burkitt's lymphoma was the stomach. Other doctors who treated Mr. Sameyah described his cancer as Burkitt's lymphoma involving the stomach. Evidence shows that the disease presented in the stomach, not the lymph nodes; that it was "extranodal" as Dr. Padova concluded.

Sameyah's expert, Dr. Hirsch, is a doctor of internal medicine, not an oncologist. The trial court did not err in declining to accept Dr. Hirsch's opinion.

We have no cause to disturb the trial court's finding, which is based on substantial evidence.

### B. *Link between carcinogenic exposures and Burkitt's lymphoma*

The trial court found the Board demonstrated that David Sameyah's carcinogenic exposures at work were not reasonably linked to his Burkitt's lymphoma, within the meaning of section 31720.6, subdivision (c). This finding is supported by substantial evidence.

The evidence shows that Burkitt's lymphoma is caused by a virus. Both experts agree on this. Sameyah's expert, Dr. Hirsch, asserts that the highest incidence of Burkitt's lymphoma occurs among children in Central Africa, and the known "risk factor" for the development of the disease in these children is Epstein-Barr virus. Epstein-Barr virus is a carcinogenic agent. As explained

above, there is no evidence in the administrative record demonstrating that Mr. Sameyah's work as a deputy sheriff exposed him to a carcinogenic viral agent within the meaning of section 31720.6, subdivision (b).[11]

Neither expert identified any other cause for Burkitt's lymphoma. Sameyah's expert, Dr. Hirsch, noted that benzene exposure has been linked to an increased risk of some lymphoma, but not Burkitt's lymphoma in particular. Mr. Sameyah was exposed to benzene "due to patrol duties with windows down, work in proximity to the 405 Freeway, and significant exposure to jet fuel."

We recognize that it is not Sameyah's burden to show a link between her husband's exposures and Burkitt's lymphoma. It is the Board's burden to show no reasonable link between the exposures and Burkitt's lymphoma.

The Board produced evidence and expert opinion demonstrating that where cancers have been caused by chemical exposure, the latency period is more than five and a half years. Mr. Sameyah began working as a deputy sheriff in June 1996. His symptoms appeared in or around December 2002. Dr. Padova opined that the latency period would be at least 10 to 15 years. The Board also submitted a report from Thomas E. Hascall, M.D., M.P.H., a doctor of internal medicine, who opined that the latency period would be a minimum of 12 years. Sameyah's expert did not comment on the latency period.

There is substantial evidence in the record showing (1) that Burkitt's lymphoma is caused by a virus; (2) that chemical exposure is not a known cause of Burkitt's lymphoma; and (3) that the latency period between exposure to the chemicals at issue here and the development of a disabling cancer would be at least 10 years, but more likely longer. We agree with the trial court that this showing is sufficient to demonstrate that David Sameyah's work-related chemical exposures are not reasonably linked to the development of his Burkitt's lymphoma.

Sameyah contends that a different result is compelled if we apply the legal principles set forth in *Garcia, supra*, 126 Cal.App.4th 298, the case interpreting the workers' compensation cancer presumption in Labor Code section 3212.1, discussed above. We disagree.

---

[11] Sameyah points out that during the time her husband worked as a deputy sheriff he was diagnosed with bronchitis and visceral herpes zoster. She has not presented evidence that either is a known carcinogen or that Mr. Sameyah contracted either as a result of the performance of his job duties. Sameyah also notes that her husband "had an elevated Hepatitis B antibody" a month after he received a Hepatitis B shot in 1998. Hepatitis B is a carcinogenic viral agent. There is no evidence, however, that Mr. Sameyah received the injection in the performance of his duties as a deputy sheriff. Nor does it appear that Sameyah is listing this exposure as a possible cause of her husband's Burkitt's lymphoma.

In *Garcia*, the employer failed to rebut the presumption that 11 years of pumping gas into a patrol car had caused the employee's kidney cancer. (*Garcia, supra*, 126 Cal.App.4th at p. 306.) The Court of Appeal cited the agreed medical examiner's concessions that he knew of no established cause for kidney cancer and he could not rule out a potential relationship between benzene exposure and kidney cancer. (*Id.* at pp. 307, 321.) Here, the Board demonstrated that there is a known cause of Burkitt's lymphoma—a virus, such as Epstein-Barr virus. There is no evidence that Mr. Sameyah was exposed to such a virus as a result of the performance of his job duties. Nor is there evidence of a diagnosis or clinical finding of the presence of Epstein-Barr virus for Mr. Sameyah. The Board's experts have concluded that there is *no* potential relationship between David Sameyah's work-related chemical exposures and his Burkitt's lymphoma because the latency period was not long enough. The appellate court in *Garcia* stated that an employer could rebut the presumption by demonstrating "it is highly unlikely the cancer was industrially caused because the period between the exposure and the manifestation of the cancer is not within the cancer's latency period." (*Id.* at p. 317.)

Sameyah criticizes the Board's showing because the Board's experts did not list a specific latency period for a Burkitt's lymphoma caused by chemical exposure. Because chemical exposure is not a known cause of Burkitt's lymphoma—and there is a known cause of this disease—we cannot fault the Board for failing to present this information. The Board's experts have concluded that a latency period of five and a half years is not long enough for the development of cancer caused by the carcinogenic chemicals to which Mr. Sameyah was exposed on the job. Their conclusions are based on extensive research regarding chemical exposures and the development of various cancers. This is competent evidence tending to show that there is no reasonable link between Mr. Sameyah's chemical exposures at work and his Burkitt's lymphoma.

The trial court did not err in denying Sameyah's petition. In deciding this case, we appreciate that the purpose of the presumption is to ease the pension member's burden of proving his or her case, and that the presumption "effectuate[s] the substantive policy goal of applying pension legislation broadly." (*Pellerin v. Kern County Employees' Retirement Association, supra*, 145 Cal.App.4th at p. 1106.) Still, the presumption set forth in section 31720.6 is a rebuttable one, and in this case substantial evidence supports the trial court's decision that the Board rebutted the cancer presumption by making the showing outlined in subdivision (c) of section 31720.6.

## DISPOSITION

The judgment is affirmed.

Mallano, P. J., and Johnson, J., concurred.