Filed 12/5/25  P. v. Esswein CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>MARSHA KAY ESSWEIN,<br><br>　　Defendant and Appellant. | G065103<br><br>(Super. Ct. No. INF062819)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Riverside County, Kristi Hester, Judge. Reversed and remanded with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　\*　　\*

Appellant Marsha Kay Esswein, who is 80 years old, is serving a sentence of 15 years to life after pleading guilty to the second degree murder of her husband. In March 2023, Esswein was diagnosed with dementia and placed in a privately-owned long-term health care facility. In November 2024, the director of Health Care Services for the California Department of Corrections and Rehabilitation (CDCR) recommended that Esswein be granted compassionate release based on her advanced dementia. The compassionate release program under Penal Code section 1172.2[1] creates a presumption in favor of recalling sentences for terminally ill or permanently incapacitated inmates unless a court finds they pose an unreasonable risk of committing a super strike based on their current physical and mental condition.

The trial court denied the request for compassionate release, concluding Esswein did not satisfy the medical requirements of section 1172.2, subdivision (b), because she was neither terminally ill nor permanently incapacitated. We conclude the court erred in denying Esswein's request for compassionate release. Accordingly, we reverse the court's order and direct the court to recall Esswein's sentence in accordance with section 1172.2.

---

[1] All further statutory references are to the Penal Code.

FACTS

In August 2008, police were called to the home Esswein shared with her 84-year-old husband Richard Esswein. Police found Esswein in the home, suffering from self-inflicted puncture wounds to her neck and cuts to her wrist. Police discovered Richard in the guest bedroom; he had been stabbed to death.

After her conviction for first degree murder was overturned on appeal, Esswein pled guilty in August 2020 to second degree murder. (§ 187, subd. (a).) The trial court sentenced Esswein to 15 years to life in state prison.

In March 2023, Esswein was granted expanded medical parole and discharged to a memory care unit at Golden Legacy Care Center (Golden Legacy), a private long-term health care facility with which the CDCR contracts to house ill prisoners.

In November 2024, Dr. Joseph Bick, the director of CDCR Health Care Services, sent a letter to the trial court recommending recall of Esswein's sentence, pursuant to section 1172.2, for the following reasons: Esswein had severe dementia, which put her at significant risk for falling, infections, and aspiration pneumonia; she could not ambulate without assistance; she was incontinent and required assistance with activities of daily living; her condition would not improve; and she was permanently medically incapacitated and had a terminal life trajectory.

Dr. Bick attached to his letter various relevant documents, including a diagnostic study report which concluded Esswein was terminally ill with a life expectancy of approximately 18 months; she did not have a history of associating with criminal elements; her case was not a high notoriety case; and she had not committed any crimes during her

3

incarceration. If Esswein were granted compassionate release, she would "be supported in completing applications for Medi-Cal and other social services and discharged to a supportive setting that [could] meet her medical needs."

A medical chronology by Dr. Thomas Bui, submitted in support of Dr. Bick's recommendation, concluded Esswein had "severe dementia . . . with an end-of-life trajectory based on her high risks of infections and aspiration pneumonia complications." Dr. Bui also concluded Esswein had a "high risk of bone fractures with her recurrent mechanical falls," and it was possible she could "die[] within the next 18 months." Dr. Bui also noted Esswein had developed bilateral lower extremity swelling, which put her at high risk for infection, together with gastroesophageal reflux disease, further contributing to her risk of aspiration. Esswein also showed "major ongoing functional deterioration and chronic pain from debilitating degenerative joint disease" and was unable to walk safely, thus requiring a wheelchair.

On December 19, 2024, the trial court held a hearing regarding Esswein's request for compassionate release. Dr. Michele DiTomas, the assistant deputy medical executive at CDCR Palliative Care, testified at the hearing. Dr. DiTomas first met Esswein when she was housed at a skilled nursing facility operated by the CDCR before she was transferred to Golden Legacy. Since Esswein had been transferred to Golden Legacy, Dr. DiTomas had seen her but did not directly treat her. In preparation for the hearing, Dr. DiTomas reviewed Esswein's medical records and spoke with Esswein's direct caretaker.

Dr. DiTomas testified to the following:

Esswein was diagnosed with dementia and cannot care for herself. The CDCR transfers an inmate's care to Golden Legacy when the inmate is permanently incapacitated. A board must agree that the inmate is

4

permanently incapacitated by cognitive impairment to be transferred to Golden Legacy, which they did in Esswein's case in 2023.

Esswein was diagnosed with vascular dementia, which was likely caused by a series of small strokes. Esswein probably has Alzheimer's disease, but that diagnosis can only be made postmortem.

Dr. DiTomas reviewed the transcript of Esswein's parole hearing, including the description of Esswein's physical abilities at the hearing. This review did not change her diagnosis of dementia.

Esswein struggles to put thoughts together. She cannot form a plan. She needs help with all activities of daily living, including selection of clothing, bathing, and using the toilet. Esswein is occasionally incontinent. She needs full-time supervision. She is physically frail, can only walk a short distance, and is at risk of falling.

Dr. DiTomas could not say with certainty whether Esswein was "in the last few months of life" but did conclude that Esswein's "cognitive impairment is severe." Dr. DiTomas acknowledged that Esswein's condition was relatively stable between her parole hearing in June 2024 and the compassionate release hearing in December 2024. The CDCR's contract with Golden Legacy was expiring. The CDCR would find an appropriate, individual placement for Esswein if she were granted compassionate release.

The trial court denied Esswein's request for compassionate release as follows:

"THE COURT: . . . I found Dr. DiTomas to be credible as far as her review of the records and her assessment. [¶] The interesting thing, though, and I had pointed out to counsel when we had our previous hearing, what I was curious to see was the difference in Ms. Esswein's condition from the June [parole] hearing to now. . . . [A] parole [board] found that

5

Ms. Esswein currently posed an unreasonable risk to public safety and that she was not suitable for parole.

"There was reference or statements made further on in that transcript from the same hearing referencing—and I will read specifically. This is from page 43 starting at line 15, 'But until your physical condition is such that you can no longer affect the same type of violence that occurred in the life crime, it's opined that the offender changed category is not yet sufficiently mitigated to justify grant of parole at this time.' Obviously, the Court is not considering the offender change category. That is for them to do. But what was—and by them I mean the Board of Parole. But what stood out to the Court was the reference to her physical condition.

"They further go on and indicate that 'she was animated and verbal throughout the hearing today. Sometimes displaying agitation and argumentativeness.' While yes, I do agree that goes in hand with the dementia, I think it most certainly is indicative of her capabilities.

"They further say she was able to move her upper body well including pointing, tapping her caregiver on the shoulder to get her attention, and easily and stably lifting a ceramic coffee mug to her lips to drink with one hand. She was also capable of maneuvering her wheelchair with her feet. She can complete all of her activities with daily living with little more than verbal prompting. And when I asked Dr. DiTomas about any changes in Ms. Esswein's condition since those observations were made, the response from Dr. DiTomas was that her condition is relatively stable with no significant change.

"And in my reading of [section] 1172.2, under [subdivision (b)(1)], it requires that the incarcerated person has a serious and advanced illness with an end of life trajectory. An example of which it includes but is not

6

limited to is advanced end stage dementia. I asked Dr. DiTomas about that or she was asked about it. But Dr. DiTomas kind of clarified what she perceived as end-stage dementia and it does not appear that Ms. Esswein falls under that category.

"So then when you look at [section] 1172.2 [subdivision (b)(2)], it says the incarcerated person is permanently medically incapacitated with a medical condition or functional impairment that renders them permanently unable to complete basic activities of daily living, including but not limited to bathing, eating, dressing, toileting, transferring, and ambulation or has progressive end stage dementia. And that incapacitation did not exist at the time of original sentencing.

"So the information that I currently have is that, yes, Ms. Esswein requires some prompting and some assistance, but she is not at the position where she is permanently unable to complete those basic activities of daily living. She is able to ambulate. And she does not currently appear to suffer from end stage dementia. So I do not believe that [section] 1172.2 [subdivision (b)(2)] exists either.

"The other thing that stood out to this Court in Dr. DiTomas's statement and she said it a couple times during her testimony that Ms. Esswein currently appears to be stable and I do think it puts this situation more in line with . . . *People v. Multani* [(2024) 106 Cal.App.5th 1334]. . . . And in Mr. Multani's situation there was no evidence of disease progression. Mr. Multani suffers from cancer and does not currently have an end of life trajectory because his cancer is currently successfully being treated.

"And while I think that with dementia, Ms. Esswein most certainly is going to move to the point where she is no longer capable of

7

committing these basic daily activities, I think she is most certainly going to move towards end of stage dementia, I do not believe that we are there yet. And so at this point I do not believe she should be granted compassionate release. This petition most certainly can be raised again in the future as Ms. Esswein's condition changes but where we currently are with the information that was made available to the Court, I do not believe her case qualifies."

## DISCUSSION

Esswein argues the trial court abused its discretion in denying her petition for compassionate release because she met the relevant criteria and does not pose an unreasonable risk of danger to public safety. We agree.

### I.

### APPLICABLE LAW

To be entitled to compassionate release under section 1172.2, the inmate must either: (1) have "a serious and advanced illness with an end-of-life trajectory. Examples include, but are not limited to, metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced end-stage dementia"; or (2) be "permanently medically incapacitated with a medical condition or functional impairment that renders them permanently unable to complete basic activities of daily living, including, but not limited to, bathing, eating, dressing, toileting, transferring, and ambulation, or has progressive end-stage dementia, and that incapacitation did not exist at the time of the original sentencing." (§ 1172.2, subd. (b)(1) & (2).)

If the court finds either of the qualifying conditions exist, "[t]here shall be a presumption favoring recall and resentencing under this section . . . which may only be overcome if a court finds the defendant is an unreasonable

8

risk of danger to public safety, as defined in subdivision (c) of Section 1170.18, based on the incarcerated person's current physical and mental condition." (§ 1172.2, subd. (b).)

Section 1170.18 defines unreasonable risk of danger to public safety as "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) These violent felonies are referred to as "super strikes" and include "murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1150–1151.)

A defendant may appeal a trial court's denial of compassionate release. (*People v. Loper* (2015) 60 Cal.4th 1155, 1168.) "We review for abuse of discretion the trial court's determination that a [defendant] poses an unreasonable risk of danger to public safety." (*People v. Lewis* (2024) 101 Cal.App.5th 401, 409.) "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) We review the trial court's factual findings for substantial evidence. (*In re White* (2020) 9 Cal.5th 455, 470.)

## II.

### ANALYSIS

As noted, the trial court found that Esswein did not satisfy either of the medical requirements of section 1172.2, subdivision (b). The court found Esswein did not have "a serious and advanced illness with an end-of-

9

life trajectory" under section 1172.2, subdivision (b)(1), because her condition was stable, she showed no signs of disease progression, and Dr. DiTomas could not state with specificity how much longer Esswein might live given her condition; and she was not "permanently medically incapacitated" under section 1172.2, subdivision (b)(2), because she was able to complete basic activities of daily living, despite needing some prompting and assistance. Although not stated explicitly, it appears the court may have concluded Esswein was capable of violence based on the fact she displayed some agitation at her parole hearing in June 2024.

The trial court's findings that Esswein did not meet either of the qualifying conditions under section 1172.2, subdivision (b), were not supported by substantial evidence. In fact, the medical record was replete with evidence that Esswein had a qualifying condition. Each of the three medical experts who had reviewed Esswein's medical records and/or personally observed her condition agreed she had end-stage dementia and would likely not live longer than 18 months. That Dr. DiTomas could not predict exactly how much longer Esswein would live and that Esswein's condition had not worsened between June and November 2024 do not, without more, undermine the medical opinions of three specialists who all concluded Esswein has end-stage dementia.

Moreover, the trial court's reliance on *People v. Multani* (2024) 106 Cal.App.5th 1334 to demonstrate Esswein does not have "a serious and advanced illness with an end-of-life trajectory" is unavailing. In *Multani*, the court found the defendant was not entitled to compassionate release under section 1172.2 because, although he was diagnosed with advanced lung cancer which had metastasized to his brain, his cancer had been successfully treated with targeted medication since 2017, and he was therefore not

10

"progressing toward death." (*Multani*, at p. 1339.) Here, on the other hand, there is no treatment for Esswein's dementia, and all three medical experts concluded she was "progressing toward death," likely within about 18 months.

The medical evidence also supported the conclusion that Esswein was permanently medically incapacitated. Dr. DiTomas testified that Esswein could not independently perform any of the major activities of daily life, including fixing meals, bathing, dressing, using the toilet, or walking. The only evidence the court cited to support its conclusion Esswein was not permanently medically incapacitated was the observation by the Board of Parole Hearings that, on the day of her parole hearing, she could "point[], tap[] her caregiver on the shoulder to get her attention, and easily and stably lift[] a ceramic coffee mug to her lips to drink with one hand." The fact the parole board observed Esswein pointing, tapping her finger, and lifting a coffee mug is not substantial evidence which overcomes Dr. DiTomas's medical opinion that Esswein cannot independently perform major life activities.

Furthermore, the trial court failed to make any explicit finding that Esswein posed an unreasonable risk of committing a super strike crime if granted compassionate release. Section 1172.2 creates a rebuttable presumption in favor of recall. The prosecutor, as the party opposing the presumption, has "the affirmative obligation to prove [the presumption] false." (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 681.) Therefore, to deny recall of sentence, a court must find, supported by evidence in the record, that the inmate poses an unreasonable risk of committing a super strike.

11

Here, the only evidence the trial court cited was the parole board's observation that Esswein "display[ed] agitation and argumentativeness" at the parole hearing. Esswein's behavior at her parole hearing, without more, is insufficient to support a finding that she poses an unreasonable risk of committing a super strike felony if released. (See *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 83 [trial court's "generalized concern" the defendant with incurable pancreatic cancer might commit a crime was insufficient to rebut presumption in favor of recall of sentence].) We also note that the parole board explicitly stated, "this is not . . . a medical hearing."

Our review of the record finds no substantial evidence to support a finding that Esswein poses an unreasonable risk of committing a super strike based on her current health condition. She is 80 years old, has severe dementia, and has difficulty completing any of the major activities of daily living. There are no records of prison violations or negative psychological assessments while she has had severe dementia. She had no prior violent criminal history before killing her husband and records show she has not committed any crimes while incarcerated. There was no evidence presented at the hearing that similarly situated elderly inmates with severe dementia still pose an unreasonable risk of committing a super strike crime. Moreover, the agitation Esswein displayed at the parole hearing is consistent with dementia and, without more, is not proof of future criminality, particularly given her physical limitations.

The trial court's factual findings were not supported by substantial evidence, and its order declining to recall Esswein's sentence was therefore an abuse of discretion.

## DISPOSITION

We reverse the trial court's order denying the petition to recall Esswein's sentence under section 1172.2 and direct the court to grant the petition and recall Esswein's sentence.


BANCROFT, J.*

WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.